# STATE OF NORTH DAKOTA, Respondent, v. HARRY W. CARTER, Appellant.

## (195 N. W. 567.)

**Homicide — murder in second degree must be committed with malice, express or implied; deliberation or premeditation not necessary to murder in second degree.**

1. To support a verdict of murder in the second degree, under the statutes, the state must prove beyond a reasonable doubt that the homicide was committed with malice, express or implied. Deliberation or premeditation are not necessary ingredients in the crime of murder in the second degree. Certain expressions in State v. Mueller, 40 N. D. 35, 54, explained.

**Homicide — that killing malicious in law does not necessarily imply wilfulness, deliberation, or premeditation.**

2. The fact that the killing is malicious in law does not necessarily imply the presence of wilfulness, deliberation or premeditation.

---

Note.—(1) Elements of second degree murder, see 13 R. C. L. 777; 3 R. C. L. Supp. 82; 5 R. C. L. Supp. 709.

(3) Erroneous instruction cured by other instructions, see 14 R. C. L. 812, 815; 3 R. C. L. Supp. 295, 297; 4 R. C. L. Supp. 921, 922; 5 R. C. L. Supp. 780.

(6) Abstract instructions generally, 14 R. C. L. 783; 3 R. C. L. Supp. 283; 5 R. C. L. Supp. 777.

(8) Flight of defendant after commission of crime evidence of guilt, see 14 R. C. L. 746.

(10) Refusal of instructions covered by instructions already given, see 14 R. C. L. 752; 3 R. C. L. Supp. 275; 4 R. C. L. Supp. 916; 5 R. C. L. Supp. 776.

**Criminal law — it must appear from examination of entire charge that misstatement of law misled jury; partly inaccurate charge may be cured by other portions correctly stating law; instruction not fully stating law may be cured by subsequent instruction completing it; theoretical or technical error not misleading jury not ground for reversal.**

3. Mere defectiveness or inaccuracy in the charge is not necessarily sufficient to justify a reversal. It must be made to appear that the court misstated a rule of law in a substantial particular, and it must appear, from an examination of the entire charge, that the misstatement was calculated to mislead the jury in arriving at a verdict upon some question submitted to it. An instruction which states the law inaccurately or even incorrectly in part, may be cured by other portions of the charge which correctly state the law. Likewise, an instruction not fully stating the law may be cured by a subsequent instruction which completes it. Theoretical or technical error, or error which for other reasons, is not calculated to lead the jury to return an erroneous verdict, does not constitute a ground for reversal.

**Homicide — where justifying verdict of murder in first degree, instructions thereon proper.**

4. Evidence having been introduced by the state from which the jury would have been justified, as a matter of law, in finding the defendant guilty of murder in the first degree, it was proper to instruct the jury fully as to that crime.

**Criminal law — instruction stating law applicable to facts with substantial accuracy not ground for reversal, where not prejudicial.**

5. The mere fact that an instruction is not given in the language of the statute is not ground for reversal when the instruction states the law applicable to the facts with substantial accuracy and it does not appear that it was in fact prejudicial.

**Criminal law — where no testimony applicable to requested charge, it is properly denied.**

6. It is not error to refuse defendant's request for instructions when there is no testimony in the case to which the requested charge is applicable.

**Homicide — instructions on law of self-defense held proper; instructions that, after notice of intention to arrest, officer may use all necessary means to affect arrest of accused who resists or flees held not erroneous.**

7. Certain instructions examined, and, for reasons stated in the opinion, *held* to state the law correctly.

**Criminal law — charge that flight immediately after commission of crime is circumstance to be considered in determining guilt or innocence held proper.**

8. When justified by the evidence, an instruction that the flight of a person immediately after the commission of a crime, is a circumstance that may be considered in determining the probability of guilt or innocence, is proper and correctly states the law.

**Homicide — peace officer has right to use necessary force to eject from street person committing misdemeanor.**

9. A peace officer has the legal right to use force reasonably necessary to eject from a public street a person who insists on remaining therein notwithstanding an ordinance of the city or a state statute which makes his presence, under the circumstances, a misdemeanor.

**Criminal law — refusal of instructions fully covered in giving instructions not erroneous.**

10. It is not error to refuse to give instructions requested by the defendant, when the court, in other parts of the charge, substantially covers the matters dealt with in the requested instructions.

**Criminal law — denial of motion for new trial on newly discovered evidence held not error where witness was in court under subpœna.**

11. For reasons stated in the opinion, it is *held* that the court did not abuse its discretion in denying defendant's motion for a new trial.

Opinion filed October 26, 1923.

Criminal Law, 16 C. J. §§ 2391 p. 985 n. 48; 2466 p. 1031 n. 87, 89; 2485 p. 1045 n. 39; 2495 p. 1053 n. 93; 2506 p. 1063 n. 85; 2720 p. 1191 n. 7: 17 C. J. §§ 3689 p. 341 n. 84; 3703 p. 347 n. 77; 3751 p. 368 n. 5.  Homicide, 29 C. J. §§ 90 p. 1112 n. 14; 97 p. 1113 n. 34; 104 p. 1118 n. 79; 105 p. 1118 n. 85; 106 p. 1120 n. 5; 107 p. 1121 n. 13: 30 C. J. §§ 257 p. 79 n. 67.  New, 537 p. 292 n. 58; 623 p. 376 n. 66; 641 p. 396 n. 23.

Appeal from the District Court of Williams County, *Lowe,* J. Affirmed.

*E. R. Sinkler* and *G. O. Brekke* for appellant.

"And where one kills an officer attempting to arrest him, if there is nothing from which his knowledge of the official character of the officer might be inferred, the measure of his offense descends from murder into one of the degrees of manslaughter." Yates v. People, 32 N. Y. 509.

"The killing of an officer by a person whom he sought to arrest is

manslaughter only, where such person had no notification, either express or implied, and no information of the officer's powers, and intentions, or of the character in which he was acting, otherwise it is murder." Robinson v. State, 93 Ga. 77, 44 Am. St. Rep. 127, 18 S. E. 1018.

"And the duty of a peace officer to arrest a person for unlawfully carrying arms should not be given in a charge to the jury in a prosecution for the killing of such officer while he was attempting to arrest such person, where the officer did not disclose his authority, and the person killing him did not know he was an officer, or was attempting to arrest him, since, under such circumstances, he had a right to resist." Montgomery v. State, 43 Tex. Crim. Rep. 304, 55 L.R.A.866, 65 S. W. 537; Strickland v. State, 81 Mass. 134, 32 So. 921; State v. Alford, 80 N. C. 445; Starr v. United States, 153 U. S. 614, 38 L. ed. 841, 14 Sup. Ct. Rep. 919;

"But though it be deemed the duty of an officer to give notice of an intention to arrest before doing so, it does not follow that, in case of his failure to do so, a homicide committed in resisting such arrest, would be either justifiable or excusable. The person sought to be arrested may not unlawfully offer forcible resistance to such attempt to arrest him, until all other means of peaceably avoiding it have been exhausted and it is only in the last extremity that the right to use a deadly weapon under any such circumstances, arises." People v. Carlton, 115 N. Y. 618, 22 N. E. 257; State v. Phillips, 118 Iowa, 660, 92 N. W. 876; Territory v. McGinnis (N. M.) 61 Pac. 208.

"While a man is not justified in killing in defense against an illegal arrest of an ordinary character, the law sets such high value upon the liberty of the citizen that an attempt to arrest him unlawfully is esteemed a great provocation—such as may reduce a killing in resistance of such an arrest to manslaughter." Miller v. State, 32 Tex. Crim. Rep. 319, 20 S. W. 1103; Ex parte Sherwood, 29 Tex. App. 334, 15 S. W. 812; Jones v. State, 26 Tex. App. 1, 8 Am. St. Rep. 454; Dyson v. State, 14 Tex. App. 454; Noles v. State, 26 Ala. 31, 62 Am. Dec. 711; Brooks v. Com., 61 Pa. 352, 100 Am. Dec. 545; King v. Aday, 1 Leach, C. L. 206.

"And as a general rule it is not murder but manslaughter to kill an officer or other person to prevent an illegal arrest." 52 L.R.A. 751, 29 So. 535; 13 Am. Rep. 601, 55 Pac. 626.

"A person may resist an unlawful attempt to arrest him, and if necessary, rather than submit, he may lawfully kill the person making it." Zimmerman v. State, 14 Neb. 568, 17 N. W. 115; State v. Scheele, 57. Conn. 307.

"Where there are persons in sight whose aid can be procured, it is aggravated assault and battery for an officer to strike with a pistol a drunken man who refused to go with him." Skidmore v. State (1875) 43 Tex. 93; Skidmore v. State (1877) 2 Tex. App. 20.

"The officer cannot chastise the prisoner for insolence." Moody v. State (1904) 120 Ga. 868, 48 S. E. 340; Dixon v. State (1912) 12 Ga. App. 17, 76 S. E. 794.

"He may not unnecessarily brutally assault and beat him." Cash v. People (1889) 32 Ill. App. 250.

"He cannot strike and beat an unresisting prisoner after they have reached the guardhouse." Moody v. State (Ga.) supra.

"When a person being without fault, is in a place where he has a right to be, and is violently assaulted, he may, without retreating, repell force by force, and if, in the reasonable exercise of his right to self defense, his assailant is killed, he is justifiable." Runyan v. State, 57 Ind. 80; Miller v. State, 74 Ind. 1.

"An innocent man is unconscious of guilt and may stand on his own defense. When assailed under a pretense which is false, his natural passion rises, and he turns upon his assailant with indignation and anger. To be arrested without cause is, to the innocent person, great provocation. If in the frenzy of passion he loses his self control and kills his assailant, the law so far regards his infirmity that it acquits him of malicious homicide." State v. Scheele, 14 Am. St. Rep. 116.

"It is apparent that what the officer did or did not do at the time of the attempted arrest, if the defendant was not committing a crime, must be the criterion as to whether the defendant could or could not resist, and the determination of whether he could or could not resist must determine whether he did, in killing the officer, commit any crime and what the grade of that crime is." Robinson v. State (Ga.) 44 Am. St. Rep. 127; Montgomery v. State, 55 L.R.A. 866; Strickland v. State, 32 So. 921; People v. Carleton, 22 N. E. 257; State v. Phillips, 92 N. W. 876; Territory v. McGinnis, 61 Pac. 208; Miller v. State, 32 Tex. Crim. Rep. 319.

"In charging the jury the court should limit its instructions to the facts in evidence. The court is not called upon to settle legal principles which have no relevancy to the case before it; it should confine itself to those questions of law alone which arise from the facts and circumstances established by the testimony and which properly belong to the case at bar. The fair test of the propriety of a charge cannot be whether in the abstract it is right. It must be considered with reference to the evidence of the facts charged on which the jury is required to respond. It follows then from what has been said that it is improper to give an instruction where there is no evidence on which to base it, or to submit to the jury matters which there is no evidence tending to prove." See cases cited 2 Enc. Pl. & Pr. pp. 168–170.

*R. E. Swendseid*, State's Attorney, and *F. F. Wyckoff*, for respondent.

· "A person is drunk in a legal sense when he is so far under the influence of intoxicating liquor that his passions are visibly excited or his judgment impaired by the liquor." State v. Pierce (Iowa) 21 N. W. 195; Lafler v. Fisher (Mich.) 79 N. W. 934.

"However, if the party about to be arrested knows the capacity and purpose of the officer it is not necessary for the officer to make known said purpose, or in what capacity he is acting." Montgomery v. State, 55 L.R.A. 866.

"While the arrest was practically admitted by the State to have been unlawful and without cause, there was some evidence which the jury had a right to consider which tended to show malice. The facts as claimed by deceased, that before leaving the room defendant put on a slicker having a pistol in his pocket that he told the deceased that somebody was looking out of the jail window apparently with a design to attract his attention, and thereafter immediately shot him, and that he continued to fire after deceased had fallen, were circumstances which might well have justified the jury in finding that there was express malice." State v. Meyers (Ore.) 33 L.R.A.(N.S.) 143.

"The general rule is that the presumption of malice applies where the homicide is committed with a deadly instrument, unless the contrary appears from the evidence." Whart. Crim. Ev. p. 1520.

"In this case, if defendant intentionally, wrongfully, killed the de-

ceased, without any justification or excuse, then he killed with malice, and that would constitute murder." State v. McDaniel (S. C.) 102 Am. St. Rep. 661.

"However, if the party about to be arrested knows the capacity and purpose of the officer, it is not necessary for the officer to make known said purpose, or in what capacity he is acting." Montgomery v. State, 55 L.R.A. 866.

JOHNSON, J. The defendant and appellant was convicted of murder in the second degree in the district court of Williams county. He was informed against in Mountrail county, but on application for a change of venue by him, the case was transferred to Williams county. He appeals from the judgment and from an order denying a motion for a new trial.

The appellant makes three principal contentions, any one of which, if sustained, necessitates a new trial. The grounds of error, in general, are: First, that the evidence is insufficient to support a verdict of murder in the second degree, there being, it is alleged, no evidence of a premeditated design to effect death or of malice, express or implied, existing at the time of the homicide; second, that the court misdirected the jury in a manner in fact prejudicial to the defendant and also erroneously refused to give requested instructions: and, thirdly, that the trial court erroneously denied defendant's motion for a new trial upon the ground of newly discovered evidence.

There is testimony in the record tending to show the following facts: About midnight on the 18th of August, 1921, one C. L. Madison was shot, death resulting within an hour. Deceased was at that time on the police force of the city of Stanley. The defendant, for some time prior to the shooting, had been in the Commercial Hotel in a somewhat intoxicated condition; he had been using profane language, pushing on the doors of the rooms and trying to get into some of them and, in a rather boisterous and noisy manner, insisting that he had a right to be there notwithstanding the fact that he did not have a room at the hotel. One of the girls at the desk ordered him to leave the hotel, but he refused. She thereupon informed him that she would call the police, whereupon he stated in substance that she could call all the marshals or police she desired and they could not "hand" him anything; that he

did not "give a damn for all your policemen." The girl then went out and Madison, the deceased, came into the hotel. Upon his coming into the room where the defendant was, the defendant made "a hurried exit" down the back stairs. The deceased followed defendant down the back stairs, came back a few moments later, and obtained a description of the man who had been making the disturbance in the hotel. Upon receiving the description, the deceased went out and a very short time afterwards two shots, with a few minutes intervening, were heard, the second shot resulting in the death of the officer. The marshal did not have a warrant for the arrest of the defendant. The evidence further shows that the defendant, at the time of the shooting, knew that the deceased was a police officer and knew that he had been sent for because of the disturbance made by the defendant in the hotel. The testimony further shows that there was scuffling out on the street, but beyond that part of the street which was illumined by one lamp which was lighted directly in front of the hotel building. The sound of blows was heard and these blows seemed to indicate that somebody was being hit on the head. Then a shot was heard and that shot was fired in the air and was from the gun which was in the possession of the policeman and for the purpose of reducing the defendant to submission, either in order to move on or to go with the policeman for the purpose of arrest. Bystanders also heard the defendant say that he had "had enough." The deceased stated, a few minutes before he died, that he was seeking to arrest the defendant; that the defendant resisted; that deceased fired in the air in order to scare the defendant and that, when the defendant was being let up, he reached with his arm around the waist of the policeman, took the gun from him, and shot him point blank in the abdomen, the bullet passing thru the body. It appears that the policeman had the defendant down and probably was striking him at the time when the defendant said he had had enough, whereupon deceased let the defendant up. The evidence shows that the defendant immediately ran away from the scene of the shooting and was seen the next morning near a haystack not far from the place where the homicide occurred and was afterwards found, by the citizens of Stanley, hidden in a grain shock. There was some blood on his person and in his hair and some wounds in the scalp, recently inflicted. The deceased, Madison, was bruised about the head, indicating that he had recently re-

ceived blows thereon. While the defendant was confined in jail, he had nearly succeeded in sawing through the bars of his cell when discovered by the local officers. There is testimony to the effect that when the deceased located the defendant out in the street, after obtaining the description of him in the hotel, he said to the defendant: "Come with me," to which the defendant replied that he would not come with him "or any other policeman." Immediately thereafter the scuffle started. The state introduced an ordinance prohibiting the presence of intoxicated persons on the streets of Stanley. One witness for the state testified that the deceased told him, immediately after the shooting, that he was not trying to arrest defendant, but was driving him off the street. The dying declaration of deceased was to the effect that he was trying to arrest defendant and that defendant resisted arrest.

Section 9462, Comp. Laws 1913, declares homicide to be murder in the following cases:

"1. When perpetrated without authority of law, and with a premeditated design to effect the death of the person killed or of any other human being.

"2. When perpetrated by any act imminently dangerous to others and evincing a depraved mind, regardless of human life, although without any premeditated design to effect the death of any particular individual.

"3. When perpetrated without any design to effect death by a person engaged in the commission of any felony."

Section 9468 divides murder into two degrees and § 9469 defines murder in the first and second degrees as follows:

"Every murder perpetrated by means of poison, or by lying in wait, or by torture, or by other willful, deliberate or premeditated killing, or in committing or attempting to commit any sodomy, rape, mayhem, arson, robbery or burglary, shall be deemed murder in the first degree; all other kinds of murder shall be deemed murder in the second degree."

Does the evidence support a verdict of second degree murder? It seems clear that malice, express or implied, is essential to the crime of murder in the second degree. In other jurisdictions under statutes dividing murder into degrees and providing that homicide, committed by certain means and in a certain manner, shall be murder in the second degree, murder in the second degree is common law murder.

29 C. J. 1118. At common law, of course, malice, either express or implied, was an essential ingredient of the crime of murder. 4 Bl. Com. 195 ff. Blackstone says at page 200: "In like manner, if one kills an officer of justice, either civil or criminal, in the execution of his duty, or any of his assistants endeavoring to conserve the peace, or any private person endeavoring to suppress an affray or apprehend a felon, knowing his authority or the intention with which he interposes, the law will imply malice, and the killer shall be guilty of murder." Later, on page 201, the same author says: "For all homicide is presumed to be malicious until the contrary appeareth upon evidence." We are, therefore, of the opinion that the state must establish malice, express or implied, beyond a reasonable doubt, in order to sustain a conviction of murder in the second degree.

In the case of State v. Mueller, 40 N. D. 35, 54, 168 N. W. 68, an expression is used which seems to have raised doubt as to whether, in this jurisdiction, malice is an essential element in the crime of murder in the second degree. In that case, there was evidence from which express malice, as well as premeditation, could have been found. It is stated in the opinion, at page 54 of the official report, that no premeditation "or malice aforethought" is necessary to constitute the crime of murder in the second degree. The phrase "malice aforethought" was used by the court in that case to convey the idea of express malice as distinguished from implied malice. The decision is clearly correct and the opinion clearly shows that the court intended to hold that malice is an essential ingredient in that crime. See 29 C. J. 1120, note 4.

The trial court correctly defined and distinguished murder in the first and second degree. It told the jury, in substance, that before the defendant could be found guilty of murder in the first degree the jury must find that the killing was wilful, deliberate and premeditated. This stated the law perhaps more favorably to the defendant than the language of the statute justifies. It does not appear that all of these elements, to wit: wilfulness, deliberation and premeditation, must be present, but that if anyone of them is, it is sufficient. The disjunctive "or," not "and," is used in the statute. In distinguishing second degree murder, the court, in substance, told the jury that malice was an essential ingredient of that crime, but that wilfulness, deliberation or

premeditation were not essential elements thereof. We think that this charge was entirely fair to the defendant and stated the law correctly under our statutes. The supreme court of California in People v. Long, 39 Cal. 694, construing a statute identical with § 9469, Comp. Laws 1913, held that, while malice was an essential ingredient of murder in the first and second degree, deliberation and premeditation were not necessary elements in the crime of murder in the second degree. The court points out that no preconceived design is necessary to constitute murder in the second degree. The fact that the killing is malicious in law does not necessarily show the presence of deliberation or premeditation. This seems to be a sound distinction between the two degrees of murder. See 29 C. J. 1112, 1118; State v. Wong Fun, 22 Nev. 336, 40 Pac. 95.

It is next contended that the court erred in giving certain instructions to the jury. These instructions are set out in the briefs of counsel in full, supported by able and elaborate arguments, both orally and in the briefs. Mere defectiveness or inaccuracy in the charge is not necessarily sufficient to justify a reversal. It must be made to appear that the court misstated a rule of law in a substantial particular and it must appear, from an examination of the entire charge, that the misstatement was calculated to mislead the jury in arriving at a verdict upon some question submitted to it. An instruction which states the law inaccurately or even incorrectly in part, may be cured by other portions of the charge which correctly state the law. State v. Hoff, 29 N. D. 412, 150 N. W. 929; 16 C. J. 1053. Likewise, an instruction not fully stating the law may be cured by a subsequent instruction which completes it. 17 C. J. 347. Theoretical or technical error, or error which, for other reasons, is not calculated to lead the jury to return an erroneous verdict, does not constitute a ground for a reversal. Comp. Laws 1913, § 11,013; State v. Tracy, 34 N. D. 498, 158 N. W. 1069; 17 C. J. 368.

Counsel claims as error that the court instructed the jury upon the crime of murder in the first degree, asserting that there is no evidence in the record making such instruction necessary or proper. Under the facts, this instruction was proper. In the case at bar, there is testimony from which, if believed, the jury would have been justified in finding express malice. The defendant spoke contemptuously of mar-

shals and police officers in general in the hotel a few minutes before
the deceased was called to the scene of action; he said: "I don't give
a damn for all your policemen;" the defendant refused to go with
the officer, altho he knew his official character and the purpose of his
visit to the hotel, and was at the time engaged in the commission of a
public offense in the presence of the officer; when he resisted arrest a
scuffle immediately ensued, in the course of which the defendant was
thrown to the ground and so manhandled by the deceased that the de-
fendant apparently decided to submit, told the officer that he had "had
enough," and asked to be let up, whereupon the officer let him up; after
the officer had desisted using efforts to reduce the defendant to submis-
sion to his authority, because the defendant had told him that he had
had enough, all scuffling stopped, whereupon the defendant snatched
the gun from the possession of the deceased and fired it point blank into
the officer's abdomen, from the effect of which death ensued. The de-
fendant was not under attack at the time he shot the officer; the police-
man had ceased using his club to force defendant to submit to arrest;
and the jury would have been justified in finding that the defendant,
out of guile and with the intention of taking the officer by surprise, led
the policeman to believe that he would submit to arrest, and then, when
the officer was off his guard, snatched the gun from his hand, with a
design to effect death, and fired the fatal shot. The deceased had been
beaten by someone; fresh wounds and marks of violence appeared on his
head. The deceased said the defendant hit him with the gun. We
think that the evidence would have supported a verdict of murder in the
first degree. The courts have held, under similar facts, that suffi-
cient time elapsed between the moment when the struggle ended and
the fatal shot was fired to justify a finding by the jury of a premeditated
design to take human life. 29 C. J. 113 ff. Under § 9469, Comp.
Laws 1913, this would be murder in the first degree.

Strenuous objection is made to the following instruction:

"A peace officer may without a warrant arrest a person for a public
offense committed or attempted in his presence whether in the day time
or night time, and the officer need not inform the person arrested of
his authority or the cause of the arrest if the person arrested is at said
time in the actual commission of a public offense. In all other

cases so far as this case is concerned, the peace officer making an arrest must have a warrant."

This instruction was doubtless intended by the trial court to be a statement of the rule laid down in § 10,570, Comp. Laws 1913, which reads as follows:

"When arresting a person without a warrant, the officer must inform him of his authority and the cause of the arrest, except when he is in the actual commission of a public offense, or is pursued immediately after an escape."

While, certainly, the substituted effort is no improvement upon the statute, we are, nevertheless, of the opinion that, altho the charge in this respect is not ideal, no prejudice resulted, in view of the rule stated in another portion of the charge to the effect that if the defendant, at the time of the attempted arrest, for an offense other than a felony, was not committing a crime and if the officer did not have a warrant, then the deceased was exceeding his authority and the defendant had a right to resist such unlawful arrest with necessary force. 16 C. J. 1053; 17 C. J. 347; State v. Hoff, 29 N. D. 412, 150 N. W. 929. It is true that in this charge the court does not tell the jury that the officer must inform the person sought to be arrested of his authority and the cause of the arrest when the person is not engaged in the commission of a public offense, as required by § 10,570, Comp. Laws 1913. If there were any testimony in this case substantially contradicting the testimony adduced by the state to the effect that the defendant was engaged in the commission of a public offense at the time of the fatal shooting, the objection to the charge would be much more serious. The defendant himself did not testify and called no witnesses in his behalf. The state's evidence showed that the defendant was intoxicated, somewhat under the influence of intoxicating liquor, or "partly" intoxicated; no witness testified to the contrary. There being no dispute in the evidence upon this question, an instruction such as defendant requested was not required and in fact would have been improper. In this case, under § 10,567, Comp. Laws 1913, subsec. 1, it was proper for deceased to arrest defendant without a warrant.

Error is also predicated upon the following instruction:

"The court instructs the jury that if you believe from the evidence that the defendant sought, brought on, or voluntarily entered into a diffi-

culty with the deceased for the purpose of wreaking vengeance upon him, or if you find from the evidence that he shot and killed deceased at a time when he had, because of the acts of the deceased, no reasonable apprehension of immediate and impending injury to himself, and did so from a spirit of retaliation and revenge, for the purpose of punishing the deceased for past injuries done him, then the defendant cannot avail himself of the law of self defense, and you should not acquit him on that ground, no matter how great the danger or imminent the peril to which the defendant may have believed himself to have been exposed during the difficulty."

It is asserted that there is no evidence to justify the foregoing charge. The evidence does show that the defendant, in the hotel, before the deceased appeared on the scene, used defiant, contumelious, and profane language with reference to marshals and policemen in general and went out when the marshal did in fact appear; that the encounter did not take place within the circle of light, but did take place in the darkness beyond the light. We think that the jury would have been justified in finding that the defendant could have escaped had he desired and that he sought an encounter in a place of his own selection; that he was in fact engaged in an encounter with the deceased and that after being beaten by the deceased and let up, the defendant shot the deceased "from a spirit of retaliation and revenge."

Complaint is also made of the following instruction:

"In this connection I charge you that should an officer use more force than is necessary to effect such an arrest and detention, then the person arrested would have a right to resist under the law of self-defense. If, however, after notice of intention to arrest, he either flees or forcibly resists, the officer may use all necessary means to effect the arrest."

The objection is not well taken. The instruction correctly states the law and the evidence justifies the instructions.

Complaint is made that the court erred in instructing the jury, in substance, that the flight of a person, immediately after the commission of a crime, is a circumstance that may be considered in determining the probability of guilt or innocence. The instruction correctly stated the law and the evidence justified such instruction. Wigmore, Ev. § 276.

The defendant strenuously contends that, inasmuch as one of the witnesses for the state testified that the deceased told him, shortly after the shooting, that he was not seeking to arrest the defendant, but simply trying to drive him off the street, that, therefore, the conduct of the deceased, in beating the defendant, when he refused to "move on," amounted to an assault and battery, which justified all force in resisting the same, to the extent of taking the life of his assailant if defendant had reasonable cause to believe that he was in danger of suffering great bodily harm or of losing his life. We believe, in the first place, that the court substantially covered this theory in its charge to the jury. In the second place, assuming that the deceased was in fact not trying to arrest the defendant, but by force attempting to eject him from the street, we believe the police officer was within his authority and rightfully performing his duty under the ordinances of the city and the laws of the state. The ordinance introduced in evidence in effect prohibited an intoxicated person from being upon the streets of Stanley. The deceased was a peace officer, charged with the general duty of keeping the peace and of upholding the law. If he was in fact removing the defendant from the street, to use necessary force to accomplish this purpose would not be assault and battery. We see no reason, based either on principle or public policy, why the chief of police of a city may not use all force reasonably necessary to remove from the public thoroughfares of the corporation persons who insist on remaining there in violation of ordinances or statutes, enacted to protect the public peace or in the interest of public safety. He had the same legal right to require the defendant to leave the streets of Stanley, where he was in violation of an ordinance of the city and of a state statute, as he had to use such force as was necessary under the circumstances to force defendant to submit to arrest for a misdemeanor. There would have been no prejudice had the court wholly failed to instruct specifically on this feature of the case.

The appellant assigns numerous errors based upon the refusal of the trial court to give certain instructions. We have examined carefully all of the requested instructions and we find that either they were not justified by any testimony in the case or they were substantially covered by instructions that were in fact given. To illustrate: Instructions were requested to the effect that an arrest might be made in

such a wanton and menacing manner as to threaten the accused with bodily harm or loss of life, and that killing under such circumstances would be justified, even if the attempted arrest was lawful, if the accused had reason to believe that he was in danger of great bodily harm or of losing his life. Instructions of this character would have been wholly improper because there was no evidence before the jury from which it would have been justified in finding that the officer sought to make the arrest in such a wanton and menacing manner as to give the accused reasonable ground for apprehension that he was in danger of great bodily harm or of losing his life. The evidence, affirmatively and without dispute, shows that, when the accused indicated a readiness to submit to arrest, the officer immediately ceased beating him and that thereafter, and without any necessity based upon the right of self defense, the defendant shot the deceased.

The court correctly stated the law of manslaughter in the first and second degree to the jury and this theory of the case was as fully and advantageously covered as the defendant had a legal right to require. It is doubtful if instructions upon mutual combat and killing in the heat of passion would have been proper under the undisputed evidence in the case. The court did tell the jury that, where homicide was committed in the heat of passion with provocation, the jury must determine whether there was malice and premeditated design. The court, therefore, submitted the defendant's theory in this respect to the jury. Neither is there any evidence to warrant the requested instruction that the deceased unnecessarily struck the defendant in order to arrest him; the evidence all shows that the defendant refused to go with the deceased, that a scuffle ensued, and that after a while the defendant said he had had enough, whereupon the policeman desisted from the use of force. The court correctly instructed the jury upon the law as to the time for the cooling of the passions and it was directed to consider all the evidence in the case upon the question as to whether the homicide was justifiable and committed in self defense. The law of self-defense was clearly and correctly defined. The court further told the jury that the defendant should not be subjected to more restraint than was necessary for his arrest and detention, and if the officer used more force than was necessary to effect his arrest and detention, then the defendant would have the right to resist such arrest under the law of self defense.

The court stated to the jury, clearly and correctly, that if, at the time the deceased was attempting to arrest the accused, the defendant was not engaged in committing a crime, and the deceased was attempting to arrest him without a warrant for some offense other than a felony, the deceased would have been exceeding his authority and would have no right to make such arrest, and the defendant would have a right to resist such unlawful arrest with all necessary force. The court also told the jury that if the deceased sought to arrest the defendant without legal right, or did anything to the defendant amounting to assault and battery, the latter had the right to use all necessary force to prevent such unlawful assault or arrest. The jury was then told that, under such circumstances, the defendant would not have the right to kill, unless there was reasonable ground for the defendant to apprehend a design on the part of the deceased to commit a felony or do some great personal injury, with imminent danger of such design being accomplished. If the defendant, the court said, used more force than appeared to him at the time necessary, he would be the aggressor and the law of self defense would not be available to him.

We think the foregoing, very brief summary of the instructions given clearly demonstrates that the trial court fully and fairly instructed the jury upon every theory justified under the evidence. We find no prejudicial error, either in giving or refusing instructions.

The last point made by the appellant is that the court erred in refusing to grant his motion for a new trial upon the ground of newly discovered evidence. We do not believe it is necessary to set out the affidavits in support of this motion. We are entirely satisfied that the court properly exercised its discretion in refusing to grant a new trial upon this ground. It may be pointed out in passing that perhaps the strongest claim for a new trial is rested on the affidavit of one James Murray, in which the affiant claimed that he was present when the shooting took place and was within a few feet from the principals in the tragedy. This affiant states that he heard the deceased order the defendant out of town; that he saw the deceased beat the defendant over the head with a club and saw him shoot in the air and then pound the defendant some more. This affiant further says that he heard the defendant plead with the officer not to beat him. The record in this court discloses the fact that James Murray was present under a sub-

poena issued at the request of the defendant during all the time that the trial was in progress, that he was paid his witness fees by the state under an order of the court directing the state to pay witness fees for the defendant, and that his receipt for such fees is on file. Why he was not called to testify is wholly unexplained. From this fact it also appears that the evidence, if newly discovered, could have been known to the defendant at the trial, in the exercise of ordinary diligence and care. The attorney for the defendant used his own affidavit in support of the motion for a new trial, but he does not state therein that the witnesses or the evidence referred to in the supporting affidavits were unknown to him or his client at the time of the trial. The defendant himself does not make an affidavit in support of the motion. No explanation is made as to why O'Brien and Murray were not available at the trial.

Finding no prejudicial error in the record, the judgment of the trial court is affirmed.

BRONSON, Ch. J., and CHRISTIANSON, BIRDZELL, and NUESSLE, JJ., concur.