STATE OF NORTH DAKOTA, Respondent, v. J. H. MILLER, Appellant.

(229 N. W. 569.)

Opinion filed February 18, 1930.

*Arthur B. Atkins* and *Wm. Langer,* for appellant.

*James Morris,* Attorney General, and *George W. Lynn,* State's Attorney, for respondent.

BURR, J. The information charges the defendant with the crime of practicing medicine without a license, as follows:

"That at the same time and place the said J. H. Miller did wilfully and unlawfully in the village of Strasburg, said county and state, hold himself out to the public to be a duly qualified doctor and skilled in medicine and the diagnosis and treatment of diseases of human beings, and opened and maintained an office for the practice of medicine in said village and therein examined, diagnosed and prescribed treatments for the palliation, relief and cure of divers and various persons of sundry and various diseases and ailments and from said persons did charge and collect compensation for such services, and in particular from Joseph Wolf, R. R. Dosch and Casper Kraft, and all this without first having applied for and received a license to practice medicine from the State Board of Medical Examiners of the State of North Dakota . . . ."

The statute, § 463 of the Revised Codes, says:

"A person shall be regarded as practicing medicine within the meaning of this article who holds himself, or herself out to the public as being engaged within this state in the diagnosis or treatment of diseases or injuries of human beings; or who suggests, recommends or prescribes any form of treatment for the intended palliation, relief or cure of any physical or mental ailment of any person with the intention of receiving therefor, either directly or indirectly, any fee, gift or compensation whatsoever; or who maintains an office for the examination or treatment of persons afflicted with disease or injury of body or mind; or who attaches the title of M.D., surgeon, doctor or any word or abbreviation to his name, indicating that he is engaged in the treatment or diagnosis of the diseases or injuries of human beings. Nothing in this article, however, shall be construed . . . to prohibit the practice of christian science *or other religious tenets or religious rules or ceremonies as a form of religious worship, devotion, or healing,* provided that the per-

sons administering or making use of or assisting or prescribing such do not prescribe or administer drugs or medicines nor perform surgical or physical operations, nor assume the title of or hold themselves out to be physicians or surgeons; . . ."

The jury found the defendant guilty as charged and he has appealed from the order denying a new trial.

There are twenty-eight specifications of error; sixteen dealing with the admission of testimony; one with permitting a witness to testify whose name was not endorsed on the information; three with failure to dismiss or to direct a verdict for the defendant; six with failure or refusal to give certain instructions; one with misconduct of the state's attorney during the argument, with three sub-divisions; and one with insufficiency of the evidence to sustain the verdict.

A résumé of the testimony is necessary to understand the issues raised by the specifications of error. Witness Dosch testified: That the defendant said "he was doctoring;" that he told him he could be found at Lipp's place; that he went there to see him for treatment; that defendant commenced to examine him by opening his clothing at his breast; examined his eyes; felt his pulse, examined his stomach; took some blood from the ear and tested it; told him he was going to give him some medicine to "fix him up;" that the defendant charged him $3.00 for the examination and $16.00 for the medicine; that he got the medicine later from the express company; that he was to take some when drinking coffee, and some was to be taken with a spoon before meals and after meals; that he got six bottles of medicine that "it is just like peppermint;" the defendant sold him an electric machine for which witness paid $15.00; that he paid by check and gave the check to the defendant.

Mrs. Holzer testified: she called on the defendant at Lipp's place; that the defendant made an examination of her; that he had a machine like the other doctors had; that he put his ears to one part of it and the other portion was on her body; that he felt her pulse, told her that her blood was not right; that she was easily tired and could not sleep well; that he sold her six bottles of medicine and these came by mail; that he charged $3.00 for the examination, and she paid him for the medicine, in all $21.00; and that he told her it was medicine.

Witness Kraft testified: that he went to Lipp's house to see the de-

fendant and "took my daughter to him and told him to look and tell me what kind of sickness she had;" that he gave her a thorough examination by taking the "machine and put it in his ears and placed it on her breasts;" that he felt her pulse and her head; "gave her a box of medicine for laxative right away and then afterwards he sent the rest by mail—or by express;" defendant charged $3.00 for examination, and the rest for medicine; "in all it was $13.75."

Witness Stock testified: that he heard the defendant lecturing on the street and saw him distributing hand bills. The hand bill introduced reads as follows:

"THE HOUSE WE LIVE IN"
A Series of Lectures by
Dr. J. H. Miller
Bismarck, North Dakota
in German and English languages   Strasburg Theatre
Strasburg, N. Dak.
Commencing at 8 O'clock P. M.
Dr. Miller will devote an evening each to lectures on
THE HUMAN BODY
THE MUSCLES AND NERVES
THE BLOOD STREAM
CARE OF THE BODY

"He will explain how to Prevent Diseases, How Incurable Diseases may be Cured, How to cure Gallstones and Appendicitis without the use of the knife. He will also tell how many other diseases may be cured during the course of his lectures.

"Dr. Miller represents the National First Aid Association of America, of Washington, D. C., and is Vice President of the American Natropathic Association of North Dakota.

"DON'T FAIL TO HEAR HIM!"

Witness Lipp testified; that he rented a room in his house to the defendant for eight days at $1.50 per day, and that people were coming to see the defendant, two and three a day.

The defendant admitted he received fees from these patients; he says he did not charge them, but when they asked him what his fee was

stated: "I told them to give what they could or they wanted to—they asked me what the usual fee was and I told them $3.00—most of them gave me $3.00."

"Q. Your standard fee was $3.00?

"A. For the office, yes, sir."

He admitted he used the term "Dr." but said he had in mind that people would think he was a doctor of divinity. He was asked:

"Q. But did you put the phrase 'Dr.' ahead to indicate doctor of medicine?

"A. Not particularly so."

When asked if he had framed the hand bill so that it would lead people to believe he was a doctor of divinity, and not a doctor of medicine, he said: "I call myself what I always have for twenty years— Dr. J. H. Miller." He says he told the people he was located at Bismarck; told them where he was staying in Strasburg, at the Lipp residence. He admits he is not licensed in the state; that he had a stethoscope with him and used it to determine what was wrong; listened to the heart beats, tested the blood, studied it and reported to the patients their condition. He says he gave them herbs received from a doctor in Bismarck, and he would determine whether they needed a physic. While he admitted prescribing the patent medicine for them which the patients paid for and received by mail or express, he said none of it bore his name; that he got this patent medicine from Dr. Allison of Pittsburgh, Pa.; that he sent to Dr. Allison the money he received from patients for the medicine. He did not say whether he received a commission from Dr. Allison afterwards.

We have examined all of the alleged errors in the introduction of testimony and find them without merit. One witness was asked what was the conversation with the defendant at the time he met him. The objection was that the question was too broad. A motion to strike out the answer as being incompetent, irrelevant and immaterial was denied. One witness testified to transactions with the doctor, the payments he had made, and the medicine he received. A motion was made to strike out the testimony relative to medicine on the theory that the witness did not know what the medicine was. It was immaterial whether he knew what it was so long as it was given to him as medicine in treatment. A motion was made to strike out all of the testimony of this

witness relative to the contents of the bottles which he received on the ground that he was incompetent to tell what the contents were. The witness had not testified as to the contents except, as to the taste, though stating he had received it from the defendant in that it came to him by express after he had paid for it. Similar objections were made to other questions, but no reversible error is shown in any of them.

When the defendant was on the stand he was interrogated regarding the practice of natropathy or naturopathy and the court sustained objections to questions asking him to define it. There was no error in this, it was immaterial what the defendant called his treatment, providing he did what he was charged with doing as set forth in the information.

The defendant was interrogated regarding his position as a clergyman in the Seventh Day Adventist Church.

It is the contention of the defendant that he had a right to show he was a naturopath, and that if he had been permitted to show that what he was doing was "under an established tenet of the Seventh Day Adventist" church he would have been within the exemptions set forth in the statute. He contends what he was doing was building health; that this is a profession and to deny him the right to practice this profession is destroying a property right, citing State Medical Examiners v. Friedman, 150 Tenn. 152, 263 S. W. 75; Butcher v. Maybury, 6 F. (2d) 155; Harris v. State Bd. of Optometrical Examiners, 287 Pa. 531, 135 Atl. 237, and quoting from 21 R. C. L.

The court sustained objection to an offer of proof embodying his contention.

The policy or the wisdom of a statute is for the legislature to determine, not the courts. It is true, as said by appellant that this state has not so far licensed naturopaths. The defendant mistakes the issues involved. It is not what he *calls* his acts, but what he did, which is under consideration. The practice of religious tenets, or religious rules or ceremonies as a form of religious worship, devotion or healing, is not prohibited by this statute, provided "the persons administering or making use of or assisting or prescribing such do not prescribe or administer drugs or medicines nor perform surgical or physical operations, nor assume the title of or hold themselves out to be physicians or surgeons." If such teacher or minister administer a medicine or pre-

scribe a medicine or assume the title of physician, then it is immaterial whether he claim or even prove that it is a tenet of some religious organization. The issue was whether the State proved defendant prescribed or administered medicines or assumed the title of physician and was consulted and practised as such. The court was correct in sustaining the objection to the offer of proof.

The court sustained objections to questions asked one Dr. MacLachlan of Bismarck who was being interrogated on behalf of the defendant for the purpose of showing the ingredients of the medicines which the defendant ordered from Dr. Allison. It was immaterial what were the ingredients.

The term "practicing medicine" is not concerned with the efficacy of the remedy. When one diagnoses disease and prescribes and applies any therapeutic agent as a remedy, he is, in a broad sense, practicing medicine. To "prescribe" means more than suggestion or opinion. It means to direct the use of a medicine. (See Webster.) Where one claims to be able "to explain how . . . incurable diseases may be cured" it is not surprising that some may be credulous enough to believe, and where such an one comes to have his ailments diagnosed, his ills discovered, the proper remedy given, and the claimant undertakes this, makes his diagnosis, states the illness, directs the use of certain medicines and furnishes them for that purpose, either directly or indirectly, the latter must be considered as practicing medicine. The law involved here is for the protection of the public in the matter of public health against the ignorant, charlatan, and imposter. It is confined to the practice of medicine as a science and is aimed at those who profess to be what they are not. It does not pretend to interfere with a nurse, a minister, or a priest who furnishes assistance, advice or instruction, or the narration of the values of time honored specifics. It permits any one opposed to the practice of medicine, as generally understood, to show the folly of any system, the fallacious principles on which it is based, the superiority of any other method, or the relative value of different systems whether empiric or otherwise. Faith or prayer as a cure, or the practice of religious ceremonies as a remedy, either physically or mentally, is not even remotely disputed, or the teaching of the cure of disease by exercise, diet, manner of living or the use of religious rites.

Whether a remedy prescribed and furnished is harmless, or has any effect whatever is not involved. Even a food may be a medicine "if it is administered and employed for that purpose." State v. Bresee, 137 Iowa, 673, 24 L.R.A.(N.S.) 103, 114 N. W. 47. While the term "medicine," in a law regulating the sale of medicine, ordinarily would not include distilled water, milk, or bicarbonate of soda yet when the term is used with reference to prescriptions given by one diagnosing diseases and prescribing remedies these may become medicines in the sense used. As said in Com. v. Seibert, 262 Pa. 345, 105 Atl. 507, "The word 'medicine' is susceptible of distinct meanings; one indicating nothing more than a remedial agent that has the property of curing or mitigating diseases, *or is used for that purpose,* while the other indicates an act of healing." If prescribed as a medicine, as that term is usually understood in this relation, then we are not concerned with the ingredients. To prescribe and furnish water and peppermint "to settle the stomach" or water and soda "to relieve gas" is prescribing and furnishing as a medicine. But this must be done in the manner and form charged in the information before it can be said to be a violation of the statute. The defendant admitted that he got the money from the patients for the purpose of furnishing this medicine which he had prescribed, and whether the medicine was capable of doing what the defendant thought it would do and whether it was in fact a remedy, or whether it was merely water and peppermint or whether he got any portion of the price is immaterial. We find no reversible error in the introduction of testimony.

The three allegations with reference to failure to dismiss and failure to direct a verdict are untenable. No error can be predicated on refusal to advise a verdict. See State v. Wright, 20 N. D. 216, 126 N. W. 1023, Ann. Cas. 1912C, 795; State v. Albertson, 20 N. D. 512, 128 N. W. 1122. The court could not direct a verdict in any event. See § 10,854 of the Code.

The complaints regarding the instructions are six in number. It is charged the court erred "in failing of his own motion to instruct the jury on the theory of the defendant's defense as reflected from the evidence." The defense as shown by the evidence introduced by the defendant was to the effect that he was not practicing medicine, that what he did was the explanation of views which he held regarding the

physical nature of man and that these were not only in harmony with the tenets of the church of which he was a clergyman, but also part of the teachings of that church. The court read the statute and set forth the exceptions as to religious rites and ceremonies. He told the jury it was necessary for the State to prove beyond a reasonable doubt that the defendant held himself out to be a doctor, skilled in medicine, and diagnosis and treatment of disease and that he opened and maintained an office in Strasburg and diagnosed and prescribed treatments for the relief and cure of various persons, and charged and collected a fee for that without any license to practice medicine in this State. No request was made for any further instruction. As a general rule it is not reversible error for the court to fail to instruct specifically on material matters where no request is made for such instruction. State v. Carter, 50 N. D. 270, 195 N. W. 567; State v. Bowe, 57 N. D. 89, 220 N. W. 843.

The defendant charges that the court erred in failing to give the following requests:

1. "The word Naturopathy has been used on several occasions during the progress of the trial of this case and I charge you, Gentlemen of the Jury, that Naturopathy is defined as follows: 'A system of treatments for the human body by the use of Psychological, Mechanical and Material health sciences to aid in purifying, cleansing and normalizing human tissues for the preservation or restoration of health; according to the fundamental principles of Anatomy, Physiology and applied Psychology, as may be required.'"

2. "I further charge you, Gentlemen of the Jury, that the practice of Naturopathy is a distinct system of healing in itself and that it is not the practice of Medicine."

3. "I further charge you, Gentlemen of the Jury, that it is the defendant's contention in this case and it is undisputed that he is a regular Ordained Minister of the Seven Day Adventist Church, a religious Organization. The defendant also claims that the practice of Naturopathy is a part of the religious tenets and is a form of religious worship, devotion, and healing of said church organization; and I charge you that if you find from the evidence that Naturopathy, as I have heretofore defined it to you, is a part of the religious worship, devotion, and healing of said Church of the Seven Day Adventist Church Organiza-

tion; you further find that the defendant was engaged in the medical missionary work of said church while at Strasburg, North Dakota, during the time alleged in the information and that said time practiced only Naturopathy as I have heretofore defined it, then it would be your duty to find the defendant not guilty."

4. "I charge you, Gentlemen of the Jury, that there has been some evidence introduced in this case, of the Defendant giving to a certain female person while at Strasburg and while in company with her parents a certain substance designated in the evidence as a physic. I further charge you, Gentlemen of the Jury, that if you find from the evidence in this case that the substance so given or alleged to have been given by the Defendant was a Family Remedy and that the giving of the same at said time and place was the Domestic Administration of a family remedy then the Defendant would not be guilty of having prescribed treatments for the palliation, relief, or cure of any disease as charged in the information."

5. "I further charge you Gentlemen of the Jury that it is the Defendant's contention in this case that he is a regular Ordained Minister of the Seven Day Adventist Church and during all time alleged in the information was a Medical Missionary of said Church Organization. I further charge you, Gentlemen of the Jury, that if you find from the evidence that has been introduced here that the defendant, while at Strasburg, North Dakota, during the times alleged in the information was engaged in said medical Missionary work and that the things claimed by the state to have been done by the Defendant at Strasburg, North Dakota is a part of Religious Worship, Devotion, and Healing of the said Seven Day Adventist Church Organization then it would be your duty to find the defendant not guilty."

Just where the defendant got the definition of "naturopathy" which he requests is not stated; but the court was not in error in refusing to instruct on naturopathy. That naturopathy may be "a part of the religious worship, devotion and healing of said church of the Seventh Day Adventist Church is immaterial. Defendant was not charged with practicing naturopathy. He was charged with practicing medicine as prescribed, and if he did that it is immaterial what is the definition of naturopathy or whether it was part of any religious practice. Religious tenets cannot be used "as a shield to cover a business undertaking."

To charge that naturopathy was not the practice of medicine would be diverting the attention of the jury from the charge against the defendant and the facts proved. There was no error in refusing requests No. 1, 2, 3 and 5.

There was nothing in the evidence to show that the defendant was merely giving this "certain female person" a family remedy, or that it was the domestic administration of a family remedy. As already stated the evidence showed, and it is not contradicted by the defendant, that witness Kraft brought his daughter to the defendant to the place where the defendant notified the public he could be found, to learn from the defendant what kind of sickness she had. There is no claim that he was a friend of the family or even an acquaintance. The father testified as hereinbefore set forth, and whether it was a family remedy, a patent medicine, a proprietary or standard remedy or a compounded prescription is not involved. There is nothing whatever to indicate this to be a case where one embryonic scientist imparts the knowledge of his cure-all or favorite remedy to his lesser informed brother. There was no foundation for request number four.

Defendant alleges the court erred in permitting one Lang to testify, alleging that Lang's name was not endorsed upon the information, and that even after Lang was sworn as a witness his name was not endorsed upon the information. Under the provisions of § 10,631 of the Compiled Laws the state's attorney need endorse on the information the names of those witnesses only who are known to him at the time of the filing of the information. State v. Frazer, 23 S. D. 304, 121 N. W. 790. It is a direction as to known witnesses, not unknown witnesses. There is no need for endorsing the names of other witnesses upon the information when they become known during the trial. This court has held repeatedly that such other witnesses may testify even if the state's attorney knew beforehand they might become material and necessary. See State v. Albertson, 20 N. D. 512, 128 N. W. 1122; State v. Pierce, 22 N. D. 358, 133 N. W. 991; State v. Kilmer, 31 N. D. 442, 153 N. W. 1089, Ann. Cas. 1917E, 116; State v. Marty, 52 N. D. 478, 203 N. W. 679. The record shows the state's attorney stated to the court, that he "did not know at that time that he (Lang) would be a witness." The court has a right to presume the state's attorney properly performed his official duty and endorsed upon the in-

formation the names of all witnesses known to him at the time of filing. It was for the defendant to show the state's attorney did know, or should have known (State v. Frazer, 23 S. D. 304, 121 N. W. 790, supra) and that the defendant was prejudiced thereby. State v. Pierce, 22 N. D. 358, 133 N. W. 991, supra.

It is charged that the counsel for the state was guilty of misconduct —there being three specifications set forth. It appears that when the state's attorney was arguing the case to the jury—evidently he was discussing the patent medicine—he said: "It is my understanding of it, most of the patent medicine that I have had experience with were mostly alcohol." Also it is charged he said: "That there is a big commission allowed on all patent medicine," and further that he told the jury "not to consider the defense of religion because it was a fake."

The state's attorney is not precluded from making statements of common knowledge when referring to matters which are in evidence; and even if it were error to say that most liquid patent medicine contains alcohol—a fact which doubtless everyone of the jury knew—it is not reversible. It was for the trial court, in the first instance, to pass upon the propriety of the remark and remove any erroneous impression. The court, when objection was made, charged the jury, you "will know what the evidence is as given upon the stand, and if counsel makes any statement as to the evidence and it is not correct the jury should disregard such statements of counsel." Prior to this the court admonished the state's attorney saying: "Just keep within the facts Mr. State's Attorney—as near as you can." It is the duty of counsel to keep within the record but every erroneous departure is not reversible. A jury of average common sense could not be misled by such a statement to the injury of the defendant. When "substantial rights of the parties" are not affected technical errors are to be disregarded. See § 11,013 of the Code. It is evident the court took steps to see that the argument was kept within bounds. This is largely a matter for the trial court to direct. State v. McGahey, 3 N. D. 293, 55 N. W. 753; State v. King, 53 N. D. 95, 204 N. W. 969; State v. Stevens, 19 N. D. 249, 123 N. W. 889.

To express, as a deduction from the evidence, that the jury should not "consider the defense of religion because it was a fake" was legitimate.

This was sought to be injected as a defense and may be ridiculed by the state's attorney as a defense the same as a fake alibi, or other defense. Counsel "is allowed a wide latitude of speech, and must be protected therein. . . . He may draw inferences, reject theories and hypotheses, impugn motives, and question credibility, subject only to the restriction that, in so doing, he must not get clearly outside of the record, and attempt to fortify his case by his own assertions of facts, unsupported by the evidence." State v. Kent (State v. Pancoast) 5 N. D. 516, 559, 35 L.R.A. 518, 67 N. W. 1052. There is no reversible error in any of this. The state's attorney had a right to draw conclusions as to any defense of religion in the case, even if counsel for defendant may think the deduction was not correct.

The defendant says the evidence is not sufficient to sustain the verdict. We have set forth already the testimony. All this evidence went to the jury to determine—not whether he was a naturopathic specialist, not to determine whether what he was doing was in harmony with the tenets of the church with which he was affiliated, but for the purpose of determining whether he was practicing medicine in violation of the law of the land and as defined by the law of the land.

The statute is aimed at one holding himself out to be, or assuming the title of a physician. In treatment of diseases the terms "doctor" and "physician" are practically synonymous. A physician is one who has received the degree of doctor of medicine, so that the terms are used interchangeably, though "doctor" and "surgeon" may not be synonymous. See Bouvier's Law Dict.; Harrison v. State, 102 Ala. 170, 15 So. 564. Hence in a prosecution for practicing medicine without a license, evidence that the accused had a sign on his door "Dr. H. M. B." was admissible. See State v. Blumenthal, 141 Mo. App. 502, 125 S. W. 1188. The hand bill shows the defendant described himself as "Dr." His explanation of the term "Dr." is neither ingenuous nor ingenious. There is nothing anywhere to indicate he received the degree of doctor of divinity from any institution. Neither does the defendant say what he meant by the term "Dr." when he says he has for twenty years called himself "Dr. J. H. Miller." The term "Dr." may mean physician, dentist, veterinary surgeon, or doctor (philosophy, divinity, or law). But it was for the jury to say from the evidence,

whether by assuming this title, he held himself out, or wanted the public to believe him, to be a doctor of medicine.

There was sufficient evidence to take the case to the jury and on which the jury could base a verdict of guilty, after considering all defenses raised, including naturopathy, religious tenets, and assuming the title of doctor or physician.

The appeal is from the order denying a new trial. An application for a new trial on the ground that the evidence is not sufficient to justify the verdict is addressed largely to the sound discretion of the trial court. If the trial court believe that the evidence is not sufficient to justify the verdict and grant a new trial for such reason this court, as a rule, will not disturb the ruling. State v. Vogt, 57 N. D. 335, 221 N. W. 887. And when there is evidence upon which the jury can base the verdict and the court on such motion deems the evidence sufficient, such ruling will not be disturbed. State v. Hazer, 57 N. D. 900, 225 N. W. 319.

No reversible error being shown the order denying a new trial is affirmed.

BURKE, Ch. J., and NUESSLE, BIRDZELL and CHRISTIANSON, JJ., concur.