[File No. Cr. 163.]

STATE OF NORTH DAKOTA, Respondent, v. JOHN HOPPERSTAD, Appellant.

(283 N. W. 785.)

Opinion filed January 28, 1939. Rehearing denied February 18, 1939.

*Chas. A. Lyche,* for appellant.

*Alvin C. Strulz,* Attorney General, and *Albert Lundberg,* State's Attorney, for respondent.

Burr, J. The defendant was convicted of the crime of driving an automobile upon the public highways while under the influence of intoxicating liquors. He made a motion for a new trial, which was denied, and now appeals from the judgment and from the order denying a new trial.

There are numerous specifications of error. Those with reference to the charge to the jury have been abandoned. The remaining ones may be summarized as: Alleged error on the part of the court in permitting the state's attorney to indorse upon the information at the time of trial the names of certain witnesses, and in making certain rulings in the admission of testimony; that the state's attorney made statements which were prejudicial to the defendant's rights; and that "the verdict is contrary to law and clearly against the evidence."

On the main case the state's attorney called Oscar Henriksen as a witness. The defendant immediately objected on the ground that the name of this witness "is not indorsed upon the information and the state's attorney must have known at the time of the filing of the information that he would be a witness in this case, he being the committing magistrate, presided at the preliminary hearing and the state's attorney knew all about it." The court examined the reason for calling him, and upon the showing made by the state's attorney that he had not expected him to be a witness and that since the filing of the information he found it necessary to produce him, the court overruled the objection. There was no error in this. The statute (Comp. Laws, § 10,631) permits this, and we have held repeatedly such witnesses may testify. See State v. Miller, 59 N. D. 286, 298, 229 N. W. 569, 574, and cases cited. The defendant could not be prejudiced. He knew he had this

preliminary examination before the witness who was called, and knew what testimony he gave at the hearing.

· The rulings on the introduction of evidence challenged by the defendant deal almost exclusively with questions attempting to ascertain the intoxicated condition of the defendant at the time of the alleged crime.

The deputy sheriff who arrested the defendant found him in his car in the ditch on the public highway and was questioned as to his condition at that time and whether immediately thereafter he offered to get a doctor for him and as to what side of the road he "would have gone had he met an approaching car." When the defendant was on the stand the state cross-examined him, asking him if he were a drinking man, whether he had said that he got drunk two or three times a year, and whether he had trouble with the police previously because of intoxication.

There were no errors in the rulings made. It was proper to ascertain from the deputy sheriff what the defendant's condition was at practically the time of the alleged crime. The defendant submitted himself as a witness and in his testimony tried to show that he was absolutely sober at the time he was charged with driving, that he never admitted he had driven the car after drinking, and that he was a farmer living in that neighborhood, that he had never been arrested before except once and that was evidently because, as he said, "I took E. B. from East Grand Forks, I made a good fellow of myself." On cross-examination he was asked if he had ever been drunk. He admitted he had and was asked if it had been very often, how often, and whether he had ever had trouble with the police as the result of intoxication. There was no objection to the question asking him if he "had trouble with the police at Grafton any time as result of your intoxication?" He answered, "It was so very little so it was nothing to talk about," and it happened but once. There was no prejudicial error in these rulings.

The charge that the state's attorney was guilty of gross misconduct and had made statements prejudicial to the defendant's rights is based upon questions asked the defendant on cross-examination. On direct examination the defendant testified as to his condition at the time of the arrest and the amount of liquor he had purchased and drunk on that day. He admitted drinking three or four glasses of beer and stated

he had bought a half pint of whiskey in the Ben Sell's saloon that evening. He was asked in regard to the price of it, presumably to ascertain as to whether he was telling the truth as to the quantity, and the defendant gave the price. The "gross misconduct" alleged consists in the state's attorney immediately asking him, "You know what it sells for, you buy enough of it so you know the prices?" He answered, "I know some prices yes." This was the only question upon which any error is predicated. It is not unusual for an examiner to question in the form of a statement with a question mark after it. The court was not asked to strike out the answer nor to caution the jury; neither was there any objection whatever made to that particular question.

There is ample evidence to sustain the verdict. It is true the defendant denied being intoxicated at the time he was driving, and he denies the truth of some statements made by state witnesses. He lived five miles north and two miles east of Grafton. He came into Grafton about 4 P. M. of the day charged. He was sober at that time. He left in the evening about 8 o'clock. In the meantime he had several drinks of beer and he bought this bottle of whiskey. This is his own statement. Immediately he left for home, and just as he left the street of Grafton and joined the highway on the north edge of town, turning east, his car went into the north ditch. He remained sitting in his car and almost immediately one Kittleson came by. Defendant asked him to have a wrecker come out and haul him out of the ditch. Another witness, a neighbor of defendant, came there almost immediately afterwards and found him still sitting in the car and intoxicated. The road was a high, wide, dry road, and the defendant had gone into the ditch along the left side of the road. The deputy sheriff came out almost immediately. He testified the defendant was drunk then. There is testimony to show that defendant stated he drank no liquor after he started for home, and that he was intoxicated at the time he was arrested. His explanation is that while sitting in the car waiting for the wrecker he drank this whiskey and, as an explanation of the fact that no bottle was found, stated he threw away the bottle when he saw the deputy sheriff coming—he knew it was the deputy because of the big light on his cap, even when he was approaching. He admitted that there was no one with him in the car when he was driving—that he drove it himself. His explanation of being on the left side of the road

was that when he came to the highway north of the city street and was turning east, an approaching car with glaring headlights dazzled him and he went too far to the left. There was ample evidence to show he was intoxicated while he was driving. The question of his condition was clearly one for the jury. The verdict is sustained by the evidence, and therefore the judgment and order are affirmed.

NUESSLE, Ch. J., and CHRISTIANSON, MORRIS, and BURKE, JJ., concur.