[File Cr. No. 198]

THE STATE OF NORTH DAKOTA, Respondent, v. LEONARD MARESCH, Appellant.

(27 NW2d 1)

Opinion filed March 11, 1947.  Rehearing denied April 28, 1947

*W. T. DePuy* and *T. I. Dahl* (*George F. Shafer* on oral argument), for appellant.

*Nels G. Johnson,* Attorney General, and *Wallace E. Warner,* States Attorney, for respondent.

MORRIS, J.  This is an appeal from a judgment and sentence entered pursuant to a verdict of a jury finding the defendant guilty of murder in the first degree.  The last brief was filed and the case finally submitted to this court on February 5, 1947.  The sufficiency of the evidence to sustain the verdict was not challenged either by a motion for a new trial or a motion for an advised verdict.  It was not questioned in any manner before the trial court.  The rule has been long established that upon such a record the sufficiency of the evidence to sustain the verdict cannot be considered on appeal to this court from the judgment alone.  State v. McClelland, 72 ND 665, 10 NW2d 798; State v. Glass, 29 ND 620, 151 NW 229; State v. Fahn, 53 ND 203, 205 NW 67; State v. Johnson, 68 ND 236, 278 NW 241; State v. Mostad, 70 ND 73, 291 NW 910.  We, therefore, consider the evidence only to the extent necessary to an understanding of specifications of error considered herein and the prejudicial effect of error on the rights of the defendant.

At the time of her death the deceased, Sigrun Grimson, was about twenty-two years of age.  She was a graduate nurse employed in a hospital in Grafton, North Dakota.  The defendant was about twenty-three years of age.  He was a native of Grafton where he had completed his Junior year in high school.  He had served in the United States Marine Corps from December, 1942, to June, 1944, when he was discharged because of

disabilities resulting from wounds received in the invasion of Tarawa.

The defendant met the deceased shortly after his return to Grafton, about October 1, 1944. For some time preceding the death of Miss Grimson she was frequently in the company of the defendant. He spent much time with her at the Nurses Home where she lived. They also spent much time riding or parking in an automobile until early morning hours. On other occasions they frequented taverns and drank considerable liquor.

On December 13, 1944, which was the day preceding the death of the decedent, the defendant spent some time with one LaMont in a place known as Syl's Tavern. At about 1:30 in the afternoon the defendant telephoned the deceased at the Nurses Home. He and LaMont then drove to the Home in LaMont's car where the deceased joined them. They went back to the Tavern. From there they made two trips to a potato warehouse about a mile north of Grafton where they mixed and drank whiskey and coca cola. After the second trip LaMont left them at Syl's Tavern about 3:30 P.M. The defendant and the deceased went to another tavern where they remained until between 6 and 7 o'clock that evening. They left that Tavern in LaMont's automobile but LaMont was not with them. The automobile was not again seen until about 9:30 on the morning of Thursday, December 14th. It was then seen standing in the Grafton Park, facing West and near a row of short posts. Although the car was observed several times throughout the day no one approached it until about 1:30 o'clock that afternoon, when the Superintendent of the Light and Water Department of Grafton opened the door of the car and saw the defendant and the deceased in the back seat. The defendant acted as if he had been sleeping. He said he had been sleeping and showed no alarm or resentment at having been awakened. At about 4 o'clock two city employees were doing some work in the park and were approached by the defendant who asked them to give his car a push with their truck. After pushing the car away from the row of posts one of the employees went to the door of the car to speak to the defendant who was behind the steering wheel.

At that time he first noticed the deceased on the right side of the rear seat but apparently did not realize she was dead. The city employees pushed the car to a nearby filling station. By that time they had become alarmed about the condition of the girl. The station attendant looked into the car and was also alarmed. The city employees then went to look for a policeman and eventually located the Assistant Chief of Police. In the meantime, the defendant had obtained some gas and drove away from the filling station and into the business district of the city. As he drove through an alley toward the rear of Syl's Tavern he saw a friend, stopped him and inquired if he had seen LaMont, the owner of the car. While they were talking the Assistant Chief of Police came to the car, talked to the defendant and informed him that the girl was dead. The defendant evidenced surprise. He was then taken to the county jail. An autopsy showed that the stomach of the deceased was ruptured and its contents evacuated into the chest cavity. The diaphragm was ruptured in two places and the lower left lobe of the liver was bruised. These injuries caused death.

There was a hole about six inches long in the top of the muffler of the car in which the deceased was found. An analysis of the blood of the deceased showed a 27% carbon monoxide saturation. The expert witnesses agree that this was not sufficient to cause death but their opinions are divergent with respect to the symptoms, effects and aftereffects of carbon monoxide poisoning. The defendant testifies that he has no recollection of leaving the tavern on the evening of December 13th or anything that occurred thereafter until he woke up in the park the next day.

In order to prove the cause of death and the manner in which the fatal injury was sustained the State called expert witnesses who testified at some length. This evidence was admitted by the trial court under the exception to the rule against opinion evidence. Under this exception it may be stated that properly qualified medical experts may give opinions as to relevant matters, derived from their own observations of the body of the deceased or from scientific deductions from facts shown by the

evidence. Evidence was properly admitted describing the injury and that in the opinion of the experts the injury caused death. An expert also testified that the injury was caused by a violent blow. The word "blow" as used by the witness is described by him as "A pressure with force on a static body, immobile, or on a body as a moving object."

The evidence in this case is entirely circumstantial. In an attempt to eliminate the possibility of accidental injury, one of the experts was permitted to answer this question over the objection of defendant's counsel, "In your opinion, on the basis of the injuries that you observed in the body of Sigrun Grimson, could those injuries have happened by merely falling on some inanimate object?" To which the witness answered, "No, I believe not." The objection was made and it is now urged in this court that by the challenged question the State sought and received from the expert witness an answer which invaded the province of the jury. The realm within which this question falls is not clearly defined by precedent. See Wigmore, Evidence 3d ed § 1976. As a general rule it may be said that expert witnesses may not be allowed to express their opinions as to conclusions of law or facts upon which the decision of the case depends. Underhill, Criminal Evidence 4th ed § 234. Where expert opinion evidence is otherwise competent and relevant it may be based upon facts observed by the witness himself or facts presented by the testimony of other witnesses or on facts obtained by the expert from a combination of both sources. In this instance the witness was present at the autopsy and his testimony was based upon facts which he observed. He knew the exact nature of the injury and the approximate size and weight of the deceased. As an expert he knew the strength and resiliency of the various organs and human tissues involved in the injury, matters which are not of common knowledge and which the jurymen may not be presumed to know. On the other hand, the jury was confronted with the question of whether the blow resulting in the injury was administered accidentally or by criminal violence. Thus to some extent the answer of the witness must naturally bear directly upon one of the

questions that the jury must determine. In ruling upon the question the trial court was confronted with the dilemma of letting the jury in a sense speculate with respect to an important question or permitting them to be aided in their determination by the expression of the opinion of a medical expert.

Evidence is generally admissible as to the opinion of an expert regarding the nature or type of instrument that caused a wound or injury, as, for instance, whether the injury was caused by a blunt or sharp instrument. State v. Morphy, 33 Iowa 270, 11 Am Rep 122; Clemons v. State, 48 Fla 9, 37 So 647; Murray v. United States, 53 App DC 119, 288 F 1008; Perkins v. Sunset Teleph. & Teleg. Co. 155 Cal 712, 103 P 190; State v. Rizor, 353 Mo 368, 182 SW2d 525.

In this case there was at least an intimation in the record that the deceased might have been injured by falling on one of a number of low blunt posts. The State, in an attempt to eliminate that possibility, asked the challenged question. Whether the injury could or could not have been caused by falling upon one of these posts was a matter of major importance in the case. Whether the injury from which death ensued could have been occasioned by a fall on some inanimate object was a proper field for the expression of the opinion of a qualified expert. Jones, Evidence 2d ed § 1313; Newton v. Gretter, 60 ND 635, 236 NW 254; Davis v. State, 38 Md 15; State v. Seymour, 94 Iowa 699, 63 NW 661; Thorp v. Metropolitan Street R. Co. (Mo) 177 SW 851; Castanie v. United R. Co. 249 Mo 192, 155 SW 38, LRA 1915A 1056, and note; State v. Cox, 172 Minn 226, 215 NW 189; State v. Elftman, 116 Kan 214, 226 P 795.

The defendant specifies as error the overruling of objections to the following questions pertaining to the defendant's training in the Marine Corps: "And you had some training in close-in fighting, did you not?" and "Don't you get some training in the solar plexus blow?" Apparently the court was under the impression that the defendant had opened up this line of inquiry on direct examination for in response to the objection to the latter question, he said, "He has been questioned about his training. I suppose that they have a right to go into it." On direct

examination the defendant testified that after his enlistment and acceptance into the Marine Corps he went to the San Diego Marine Corps Base and there obtained his boot training which was the regular and usual Marine Corps Training. It was within the discretion of the trial court to permit the State on cross examination to inquire further concerning the defendant's training to the extent of bringing out relevant evidence concerning it. In Wigmore on Evidence 3d ed § 83, we find the following statement of general principle which is applicable here:

"As indicating the likelihood of a person doing or not doing an act in question, his physical capacity (or lack of it), his technical skill (or lack of it), and his possession (or lack) of the appropriate means or tools, are usually of sufficient probative value to be admissible. The circumstances of each case usually make it clear whether one of these data is there relevant; and no more detailed rules need to be laid down, nor has any important controversy arisen over the relevancy of this species of evidence."

See also People v. Thiede, 11 Utah 241, 39 P 837. That case was appealed to the United States Supreme Court and is reported as 159 US 510, 40 L ed 237, 16 S Ct 62. In the latter opinion it is said:

"Another witness, after stating that he knew the defendant prior to the homicide, was permitted to testify that he was 'a strong, powerful man.' While this was not very material, as the defendant was in the presence of the jury, yet, in view of the medical testimony that the wound must have been caused by a powerful blow, we cannot say that it was either incompetent or immaterial, or that the court erred in admitting it."

In this case the State had produced evidence tending to show that the deceased died as a result of a violent blow which ruptured the stomach and caused other internal injuries. Evidence to the effect that the defendant had received special training in striking the type of blow which resulted in the death of the deceased is admissible as tending to prove a relevant circumstance.

The defendant denies that he ever had sexual intercourse with

240

the decedent. Nevertheless, he sought to introduce evidence through cross-examination of the doctor who performed the autopsy that the hymen of the deceased was ruptured. He asserts that it was error for the court to exclude this proof. The excluded evidence was in no way corroborative of defendant's testimony. Its only purpose could have been to raise an inference that the deceased had had intercourse with others at some prior time. The testimony was irrelevant. It would not tend to prove or disprove that the defendant attempted to rape the deceased. There was no error in its exclusion.

The court permitted the defendant to show in considerable detail the drinking of intoxicating liquors in which both the deceased and the defendant participated on the day prior to the death. He excluded evidence concerning drinking by the deceased on other occasions and her drinking habits generally. The exclusion of such testimony was within the discretion of the trial court. State v. Brown, 185 Minn 446, 241 NW 591.

There are other specifications of error with respect to the admission or exclusion of evidence which are relatively unimportant. We find no prejudicial error committed by the court with respect thereto. We now pass to a consideration of the instruction of the jury.

The defendant submitted a number of requested instructions. Most of them were either given in substance by the court or were improper and, therefore, need little consideration here. Among those not covered by the court we find the following: "The court instructs the jury that certain police, state and county officers have testified in this case on behalf of the state, and that, in weighing their testimony greater care should be used, because of the natural and unavoidable tendency of such persons in procuring and stating evidence against the defendant."

The officers who testified and against whose testimony the request is directed are the officer in charge of the State Bureau of Criminal Identification; a member of the Board of Health of Walsh County who was also one of the Commissioners of the Board of Insanity; the Sheriff of Walsh County who was a

Deputy Sheriff at the time of the commission of the alleged crime; the Chief and the Assistant Chief of Police of the City of Grafton.

Neither the examination nor the cross examination of any of these officers disclosed prejudice or bias. The only ground for the request was the official positions held by these witnesses. They were all officers holding permanent positions under the State, County or City government. None of them were special investigators or private detectives temporarily employed to procure evidence against the defendant or assist in the solution of the particular crime charged. It was as much the duty of these witnesses to absolve and protect the innocent as it was to apprehend and assist in the conviction of the guilty. As officers they are presumed to have acted in furtherance of their duty. There is nothing in this case to indicate that they acted otherwise. The requested instruction was properly refused.

The defendant requested an instruction defining the word "blow" as used by various medical experts. This word was used in the testimony of three such experts. Each of them explained what they meant by the use of the word "blow". We find no error in the court's refusal to repeat or amplify those explanations in his instructions.

Murder in the first degree is defined by § 12–2712, Rev Code ND 1943, as follows:

"Every murder perpetrated by means of poison, or by lying in wait, or by torture, or by other willful, deliberate, or premeditated killing, or in committing or attempting to commit any sodomy, rape, mayhem, arson, robbery, or burglary, is murder in the first degree."

Section 12–0401, Rev Code ND 1943, states that:

"An act done with intent to commit a crime and tending but failing to effect its commission, is an attempt to commit that crime. . . ."

Section 12–0402 is also pertinent:

"Every person who attempts to commit any crime and in such attempt does any act toward the commission of such crime but

fails, or is prevented, or intercepted in the perpetration thereof, is punishable, . . . ."

The information charges the commission of murder in the first degree in this language:

"That at the said time and place the said defendant did then and there wilfully, unlawfully and feloniously strike one Sigrun Grimson a blow, thereby unlawfully, feloniously and wilfully causing the death of said Sigrun Grimson, while he the said Leonard Maresch was wilfully, unlawfully and feloniously attempting to commit rape in and upon the person of the said Sigrun Grimson, . . . ."

We examine the specified errors of instruction in the light of the crime charged and the statutes pertaining thereto.

Among the challenged instructions we find the following:

"The essential guilt of rape consists in the outrage to the person and feelings of the female, and if the defendant did anything evidencing an intent to violate the person of Sigrun Grimson, it constituted an assault with intent to commit rape."

Under the allegations of the information the State was required to prove to the satisfaction of the jury beyond a reasonable doubt that the defendant struck the fatal blow while attempting to commit rape upon the person of the deceased. Bishop, New Criminal Procedure 2d ed § 979. The jury in arriving at a verdict of guilty must have found from the evidence the two essential and coincident elements of the crime, the blow and the attempt to commit rape. Thus the foregoing instruction is of major importance as it must be presumed to have had a bearing on the verdict.

An allegation of attempt to commit a crime implies two things, an intent and an overt act which tends directly toward but falls short of actual commission. People v. Anderson, 1 Cal2d 687, 37 P2d 67; Clinkscales v. State, 46 Okla Crim 29, 288 P 348; State v. Lung, 21 Nev 209, 28 P 235, 37 Am St Rep 505; State v. Roby, 194 Iowa 1032, 188 NW 709; People v. Youngs, 122 Mich 292, 81 NW 114, 47 LRA 108; State v. Lampe, 131 Minn 65, 154 NW 737; Bishop, New Criminal Procedure 2d

ed § 71; 44 Am Jur 917, Rape, § 26; 22 CJS Criminal Law, § 75; 14 Am Jur 816, Criminal Law, § 68.

This court in State v. Cruikshank, 13 ND 337, 100 NW 697, said:

"It is settled that an attempt to commit a crime is compounded of two elements, viz., intent and a direct ineffectual act dòne toward its commission. It is equally well settled that there is a material difference between the preparation antecedent to an offense and the actual attempt to commit it. The preparation consists of devising or arranging the means or measures necessary for the commission of the offense, while the attempt is the direct movement toward its commission after the preparations are made. In other words, to constitute an attempt the acts of the defendant must go so far that they would result in the accomplishment of the crime unless frustrated by extraneous circumstances."

This court in State v. Cruikshank, 13 ND 337, 100 NW 697, said:

"An attempt is a frustrated effort to execute some intended complete act. To constitute an attempt, there must be a present, actual, specific intent to do a complete act, and the actual doing of some overt act which is one of the series of minor acts directly involved in the performance of the ultimate act intended."

The court told the jury that if the defendant did anything evidencing an intent to violate the person of the deceased it constituted an assault with intent to commit rape. The instruction makes evidence of intent equivalent to the act of assault. An intent without an overt act of threatened violence does not constitute an assault. State v. Cruikshank (ND) supra. The instruction fails to distinguish between anything that might evidence an intent and evidence from which the jury might determine a direct though ineffectual act done in attempting to carry out that intent. To state, as does the instruction, that anything evidencing an intent to violate the person constitutes an assault is to misstate the law.

The following instruction is challenged by the defendant on the ground that it assumes a confession or admission of the com-

mission of the crime on the part of the defendant when neither was shown by the evidence:

"If the facts and circumstances in the evidence, together with any confession or admission of the defendant, taken as a whole, prove the guilt of the defendant, beyond a reasonable doubt, then it is your duty to convict the defendant. However, if the facts and circumstances in the evidence, together with any admission or confession of the defendant, do not prove the guilt of the defendant, beyond a reasonable doubt, then it is equally your duty to acquit the defendant."

It is argued that the above instruction should have at least been accompanied by a further explanation of what the court meant by confession or admission. There is no evidence of any confession on the part of the defendant. There is no admission by him of the commission of the crime. There is, however, an admission by the defendant of an act which the jury might have considered as a circumstance pointing toward the defendant's guilt. It is disclosed by the testimony of the witness Erickson who was the officer in charge of the State Bureau of Criminal Identification and relates to a conversation had with the defendant while in jail on the evening of December 15th following his arrest. The witness testified as follows:

"Q. What did you ask Mr. Maresch? A. I asked him if he had sexual intercourse with Miss Grimson.

"Q. What did he say? A. He said no.

"Q. Was there anything else said? A. Then I said, 'You were in the back seat of the car?' 'Well,' he said, 'I tried.' I said, 'What do you mean by trying?' He said, 'I got my hands up between her legs, but I didn't get my fingers in there. She resented it so much I didn't go any further.'

"Q. Was that the conversation you had with Leonard Maresch, the defendant in this case? A. Yes."

The defendant admits having a conversation with Erickson substantially as outlined by that witness but testifies that he was confused as to time, that he had completely lost his memory as to what had occurred the night Miss Grimson died and that

his statements were made with regard to another occasion on the day previous to the day of the alleged crime. There is no other evidence as to the time the incident referred to in the defendant's statement occurred.

The instruction does not assume that a confession was made but it injects the idea of a confession into the case when there was none. No doubt the Judge had in mind that under the testimony of Erickson the jury might determine whether or not the defendant had made an admission of a circumstantial fact rather than an admission of the commission of the crime. In a criminal case it is generally error for the court to assume or intimate the assumption of a fact which the jury must determine. By the instruction given the court does not assume the existence of a confession or admission but does assume that there is evidence from which the jury might determine that either a confession or admission existed. The court should not have mentioned the word "confession" at all. If he used the word "admission" he should have pointed out to the jury that he was referring to the admission of a circumstantial fact and not to an admission by the defendant that he had committed the crime charged. In State v. Barry, 11 ND 428, 92 NW 809, this court quoted with approval from People v. Williams, 17 Cal 142. We repeat that quotation as applicable here:

" 'The court should not, directly or indirectly, assume the guilt of the accused, nor employ equivocal phrases which may leave such an impression. The experience of every lawyer shows the readiness with which a jury frequently catch at intimations of the court, and the great deference which they pay to the opinions and suggestions of the presiding judge, especially in a closely balanced case, when they can thus shift the responsibility of a decision of the issue from themselves to the court. A word, a look, or a tone may sometimes, in such cases, be of great, or even controlling, influence. A judge cannot be too cautious in a criminal trial in avoiding all interference with the conclusions of the jury upon the facts; for of this matter, under our system, they are the exclusive judges.' "

We reach the conclusion that under the evidence before the jury the instruction was erroneous.

Under the provisions of § 29–2826, Rev Code ND 1943, it is made the duty of this court when considering appeals in criminal cases to give judgment without regard to technical errors or defects which do not affect the substantial rights of the parties. State v. Tolley, 23 ND 284, 136 NW 784. Correlatively it is implied that where a defendant has been convicted upon a record that discloses error which adversely affects his substantial rights, the conviction cannot stand. The instructions in this case contain material error. A complete transcript of the evidence is a part of the record. We have examined it in detail, as we may properly do, to aid us in determining whether the erroneous instructions may have affected the substantial rights of the defendant to this prejudice.

To have found the defendant guilty of murder in the first degree the jury must have been satisfied beyond a reasonable doubt that the defendant struck a blow which resulted in the fatal injury and death of the deceased while he was attempting to commit rape upon her. The evidence is circumstantial. The facts and circumstances presented by the evidence were required to be so convincing as to be irreconcilable with the innocence of the defendant and admit of no reasonable hypothesis other than that of guilt. The evidence establishing these circumstances is such that the jury might well have found it insufficient to establish guilt of murder in the first degree. This situation has a direct bearing on the question of prejudice. People v. Hill, 37 App Div 327, 56 NYS 282; Whitten v. State, 95 Miss 410, 48 So 402. One of the erroneous instructions misdirected the jury with regard to the evidence required to establish an attempt to commit rape. The other may well have misled the jury in appraising evidence of a statement made by the defendant which could have been considered as an admission of a circumstantial fact. These errors are such as to adversely affect the substantial rights of the defendant and must, therefore, be deemed prejudicial.

The judgment appealed from is reversed and a new trial ordered.

CHRISTIANSON, Ch. J., and BURKE, NUESSLE and BURR, JJ., concur.