## PEOPLE v TOWNES

1. Cʀɪᴍɪɴᴀʟ Lᴀᴡ—Wᴇɪɢʜᴛ ᴏꜰ Eᴠɪᴅᴇɴᴄᴇ—Pʀᴇsᴇʀᴠɪɴɢ Qᴜᴇsᴛɪᴏɴ.

The weight of the evidence, to be preserved as an issue on appeal, must first be presented to the trial court by a motion for a new trial; absent such a motion, the discretion of the trial court has not been invoked and there is nothing for the Court of Appeals to review to determine if there was any abuse of discretion.

2. Hᴏᴍɪᴄɪᴅᴇ—Sᴇᴄᴏɴᴅ-Dᴇɢʀᴇᴇ Mᴜʀᴅᴇʀ—Mᴀʟɪᴄᴇ—Eᴠɪᴅᴇɴᴄᴇ.

The testimony of four witnesses in a trial for murder that the deceased had his gun in his holster when the defendant started shooting and that defendant continued to shoot while the deceased was heading for cover, was sufficient, if believed by the jury, to establish malice beyond a reasonable doubt.

3. Hᴏᴍɪᴄɪᴅᴇ—Mᴀɴsʟᴀᴜɢʜᴛᴇʀ—Eʟᴇᴍᴇɴᴛs—Iɴsᴛʀᴜᴄᴛɪᴏɴs ᴛᴏ Jᴜʀʏ.

The expression "there need be no malice" rather than the words "without malice", when used in instructions which properly apprised the jury of the elements of manslaughter, convey the same meaning to the jury and objection to their use is without merit.

4. Hᴏᴍɪᴄɪᴅᴇ—Sᴇʟꜰ-Dᴇꜰᴇɴsᴇ—Eʟᴇᴍᴇɴᴛs.

Three elements are necessary to establish a successful claim of self-defense in a homicide prosecution: first, it must appear that defendant was not the aggressor; second, it must appear to defendant that he was in danger of suffering grievous bodily injury; and third, it must also be shown by evidence that there was no way open for the defendant to retreat and that his only safety was in repelling the attack of the deceased by physical means.

Rᴇꜰᴇʀᴇɴᴄᴇs ꜰᴏʀ Pᴏɪɴᴛs ɪɴ Hᴇᴀᴅɴᴏᴛᴇs
[1] 5 Am Jur 2d, Appeal and Error §§ 607, 610, 852, 857.
[2] 40 Am Jur 2d, Homicide §§ 468, 472.
[3] 40 Am Jur 2d, Homicide §§ 499, 500.
[4] 40 Am Jur 2d, Homicide § 140.
[5] 40 Am Jur 2d, Homicide §§ 519–521.

5. Homicide—Self-Defense—Instructions to Jury.

Instructing the jury incorrectly on the defense of self-defense in a prosecution for murder, by stating that defendant must have been in immediate danger rather than have had a reasonable belief that he was in immediate danger, did not prejudice the defendant where the statement was conditioned upon the premise that defendant was the aggressor, and constituted harmless error.

Appeal from Recorder's Court of Detroit, Frank G. Schemanske, J. Submitted Division 1 November 8, 1972, at Detroit. (Docket No. 13155.) Decided January 17, 1973. Leave to appeal granted, 389 Mich 796.

Charles L. Townes was convicted of second-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Robert A. Reuther,* Assistant Prosecuting Attorney, for the people.

*Jerome P. Reif,* Assistant State Appellate Defender, for defendant.

Before: Lesinski, C. J., and Fitzgerald and Van Valkenburg,* JJ.

Van Valkenburg, J. The defendant was convicted by a jury of second-degree murder, MCLA 750.317; MSA 28.549, sentenced to a prison term of 8 to 20 years and appeals as of right.

Although some of the facts are in conflict, it appears that they may be reasonably summarized in the following manner. The defendant harbored the ostensible idea that one Odom McMillion, an

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

employee of Jessee Burnett, the deceased, had been seeing his wife, from whom he had been separated for about three years. On August 2, 1971, defendant, while travelling to see a relative with his wife and two children, stopped at the business where McMillion was employed for the express purpose of squaring things with Mr. Mc-Million, who was found sitting on a bench inside of the store. Harsh language between the two followed; and Mr. Burnett, having observed the acerbated situation, extracted a revolver from his desk and ordered the two outside, if they wanted to fight, and told defendant that he should leave. At first Mr. Townes refused but eventually acquiesced when he observed that the deceased meant business. Defendant returned to his car while Mr. Burnett returned the gun to its holster. Thereafter, shots were fired. The medical examiner testified that at least three bullets entered the body of the deceased. Other testimony showed that the deceased had been attempting to escape while the firing continued. The police officers testified that no bullets were fired from the gun being carried by Mr. Burnett. After the shooting was over, the defendant left; however, not before some shots were fired, apparently by Mr. McMillion.

The defendant raises three questions for our consideration. These will be examined separately.

First, the defendant contends that the jury verdict was against the great weight of the evidence. This issue however, is not properly before the Court for the reasons set forth in *People v Andrew Smith,* 36 Mich App 180, 181 (1971):

"The issue of the weight of the evidence must first be presented to the trial court by a motion for a new trial. No such motion having been filed in this case, the discretion of the trial court was not invoked. There

being no exercise of discretionary power, there is nothing for this Court to review to determine if there was any abuse of discretion."

Also, see *People v Mattison,* 26 Mich App 453, 459–460 (1970); *People v Paintman,* 28 Mich App 590 (1970); *People v Hearndon,* 31 Mich App 113 (1971); *People v Frank Williams,* 39 Mich App 458, 463 (1972); *People v Robert Jackson,* 41 Mich App 530 (1972).

Secondly, the defendant asserts that the people failed to prove the element of malice beyond a reasonable doubt so as to sustain the conviction of second degree murder.

Malice has been defined by our Supreme Court in *People v Hansen,* 368 Mich 344, 350–351 (1962), as follows:

"Malice requires an intent to cause the very harm that results or some harm of the same general nature, or an act done in wanton or wilful disregard of the plain and strong likelihood that some such harm will result. It requires also on the negative side the absence of any circumstances of justification, excuse, or recognized mitigation."

Malice may be inferred from the totality of the circumstances surrounding the crime. *People v Nelson,* 35 Mich App 368 (1971); *People v McKeller,* 30 Mich App 135 (1971); and *People v McBride,* 30 Mich App 201 (1971). Further, it has been held that the presence of malice may be inferred from the use of a deadly weapon. *People v McKeller, supra,* and *People v Garcia,* 36 Mich App 141 (1971).

Four witnesses testified at the trial that the deceased had his gun in his holster when the defendant started shooting and that the latter continued the action while Mr. Burnett was head-

ing for cover. Accordingly, we conclude that the evidence adduced at the trial was sufficient, if believed by the jury, to establish malice beyond a reasonable doubt.

Lastly, the defendant contends that the instructions to the jury were erroneous in three different aspects.

First, he asserts that undue emphasis was placed on the charge of second degree murder. A review of the record fails to substantiate that claim. Although a greater number of lines of transcript were used to set forth the second degree murder charge, it cannot be said that undue emphasis was placed on that charge. In the absence of any objection below, the question is not properly raised on appeal.

Secondly, the contention is made that the instructions with regard to manslaughter were erroneous. A review of the charge in this respect indicates that the trial court properly apprised the jury of the elements of manslaughter. Further, the defendant's complaint that the court used, in reference to manslaughter, the expression "there need be no malice" rather than the words "without malice", is totally without merit. Either expression would convey the same meaning to the members of the jury.

The third and most important item deals with the matter of self-defense. The instruction given by the court reads as follows:

"Now the defense in this case, members of the jury, is a defense of self-defense, and I charge you, members of the jury, first an aggressor is not necessarily a person who strikes the first blow in a personal encounter, or makes the first demonstration indicating an intent to strike. But if a person with a malice and hatred in his heart towards such a person seeks to provoke a diffi-

culty either by acts or words with the intent to induce such other person to strike the first blow, or to make the demonstration in order to form a pretext to take his life, then the defendant could not avail himself of the right of self-defense. If the defense-defendant was the aggressor in the conflict, *he cannot invoke the doctrine of self-defense as an excuse of the killing unless he was at that time in immediate danger of losing his own life, or suffering some grievous bodily injury* and that there was no retreat for safety open for him, and his only safety was in shooting the deceased. Self-defense in proper cases is the right of every person, it will not justify taking of a human life unless the jurors shall be satisfied from the testimony first that the defendant was not the aggressor in bringing on the difficulty, that is, he was without fault, second, that there existed at the time of the shooting *in his mind a present and impending necessity to shoot in order to save himself from death or some great bodily harm;* and, third, that there was—excuse me, there must have been no way open whereby he could have retreated as it appeared to him at the time of the shooting to a place of safety and thus avoid the conflict. Unless you find all three of these facts are established in the case, the plea of self-defense fails. The burden of proof of all such matters is upon the people to show that the respondent is guilty of the offense charged, and the people's testimony must be such as to satisfy the jurors that the killing was not done in self-defense. The burden is not upon the defendant who makes the defense of self-defense to satisfy the jury of the truth of his claim." (Emphasis added.)

This Court, in *People v Etheridge Turner,* 37 Mich App 226, 229 (1971), enumerated the three elements necessary to make out a successful claim of self-defense, as follows:

"In order to make out a case for self-defense three elements must be established: *first, it must appear that the defendant was not the aggressor;* second, it must appear to the defendant that he was in danger of suffering grievous bodily injury; and third, it must also

be shown by evidence that there was no way open for the defendant to retreat and that his only safety was in repelling the attack by physical means." (Emphasis added.)

Clearly the jury was properly charged by the trial court herein that self-defense is available when the defendant is not the aggressor, it appears to defendant that he is in danger of suffering grevious bodily harm and there is no avenue open for retreat.

With respect to the first emphasized portion of the charge set forth above, it should be noted that while the trial court incorrectly stated that defendant must be in immediate danger rather than have a reasonable belief he is in immediate danger, this case does not fall within the rule enunciated in *People v Sangster,* 33 Mich App 712, 714 (1971). The erroneous statement herein was conditioned upon the premise that defendant was the aggressor. Since, as noted in *Turner, supra,* self-defense is not available if defendant was the aggressor, the erroneous instruction, if anything, was beneficial to defendant. In any event, the error was harmless.

A review of the briefs and record reveals no error which would justify reversal.

Affirmed.

All concurred.