The STATE of North Dakota, Plaintiff
and Appellee,

v.

Earl HAAKENSON, Defendant
and Appellant.

Crim. No. 432.

Supreme Court of North Dakota.

Dec. 11, 1973.

**396**

Thomas F. Kelsch, State's Atty., Bismarck, for plaintiff and appellee.

Daniel J. Chapman, Bismarck, for defendant and appellant.

VOGEL, Judge, on rehearing.

The defendant was charged with first-degree manslaughter under an information charging him with killing John Tidball "in a heat of passion" and "without a design to effect the death of John Tidball." After a jury trial, he was found guilty of second-degree manslaughter under instructions which defined "second-degree manslaughter" as a homicide committed by "culpable negligence," which is one of the several definitions permitted by statute.

Section 12-27-17, North Dakota Century Code, defines "Manslaughter in [the] first degree" as a homicide "perpetrated without a design to effect death, and in a heat of passion, but in a cruel and unusual manner or by means of a dangerous weapon, unless it is committed under such circumstances as constitute excusable or justifiable homicide" (subsec. 2). "Manslaughter in [the] second degree" is defined by Section 12-27-19, N.D.C.C., as a "killing of one human being by the act, agency, procurement, or culpable negligence of another which, under the provisions of this chapter, is not murder nor manslaughter in the first degree, nor excusable nor justifiable homicide."

During the trial the defendant made a motion for an advised verdict, which was denied. Such a motion raises the question of the sufficiency of the evidence, but the order denying it is not appealable. State v. Johnson, 88 N.W.2d 209 (N.D.1958). He also made a motion for a new trial. Such a motion also raises the question of the sufficiency of the evidence, and the order denying it is appealable. Defendant attempted to appeal from the order denying the motion for a new trial, but his appeal was untimely, since it was filed sixty-four days after the making of the order denying the motion. Section 29-28-08, N.D.C.C., provides that "An appeal from a verdict or judgment may be taken within three months after its rendition and from an order within sixty days after it is made . . . ."

The defendant also appeals from the judgment, and his appeal from the judgment was timely.

The defendant raises questions, in addition to the sufficiency of the evidence, as to claimed error in the instructions of the court, particularly as to matters of self-defense and whether there is a duty to retreat, and also as to the propriety of instructions as to the lesser offense of second-degree manslaughter. He also claims that a finding of guilty of second-degree manslaughter under instructions defining that crime as one committed by "culpable negligence" necessarily constitutes an acquittal of the crime charged, which is manslaughter committed "in a heat of passion."

The facts are not clear, because of conflicts in the testimony but they may be briefly summarized:

—The defendant and his wife live in a wooded area south of Bismarck. They have had trouble previously with trespassers, loud parties, and other nocturnal annoyances nearby. On the night in question they had guests, Mr. and Mrs. Sweep, who left at about 3 a. m. in their own vehicle. A short distance from the Haakenson home, while traversing a curve on the

road, Sweep saw young people on the road, stopped, and got into an argument with them, and returned to the Haakenson house either for the purpose, as he said, of calming his wife, or, as the young people said, to get reinforcements.

—Haakenson and Mr. Sweep then returned to the scene, although (as was known to Haakenson) another equally available route from the Haakenson home to the Sweep home was unimpeded. At the scene of the previous confrontation, the teenage boys who were involved in the first encounter with Sweep were joined by older persons, including the decedent, recently discharged from the Navy. One of the older persons had a shotgun. The events thereafter are much in dispute, but it appears that one of the young people attempted, or pretended, to fire the shotgun, another struggled with him for possession of it, and several of the young people made menacing movements toward the defendant, who had fired his pistol over their heads upon arriving at the scene. Several shots were fired, all of them by the defendant. One bullet struck the shotgun, another (or perhaps the same one) temporarily deafened one young man who fell to the ground in such a fashion as to lead others to believe he was injured, and the final bullet discharged by the defendant killed the decedent, who was unarmed but close to the defendant at the time. Ballistic evidence was to the effect that the bullet was fired at a muzzle-to-body distance of two inches or less.

—According to Sweep, at the moment before the fatal shot was fired, "two kids were trying to get at" the defendant, and the defendant was swinging at them with his right hand, while holding the pistol in his left hand, and the third man was approaching the defendant from a few feet away, holding the rifle by the barrel, like a club. One of the kids "trying to get at" the defendant was the decedent.

—The defendant claimed the homicide was justifiable, in self-defense.

## I. THE SCOPE OF REVIEW

We are met at the outset by the State's claim that we have nothing to review. Pointing to the facts that the defendant purported to appeal from both the order denying the motion for new trial and the judgment, that the motion for new trial included allegations of insufficiency of the evidence and alleged error in the instructions, and that the motion for new trial was too late, the State argues that the abortive appeal from the order denying a new trial makes the order res judicata and precludes review of all matters raised in the motion for new trial. The State argues that we are therefore restricted in our review to only matters appearing on the face of the judgment roll, and cannot review the evidence or the instructions.

While such an argument has merit as to civil cases [Marsden v. O'Callaghan, 77 N.W.2d 522 (N.D.1956)], we find it unpersuasive in criminal cases.

In support of its argument, the State cites State v. McClelland, 72 N.D. 665, 10 N.W.2d 798 (1943); State v. Emmil, 172 N.W.2d 589 (N.D.1969); and State v. Wilson, 142 N.W.2d 106 (N.D.1966). In State v. McClelland, the question of the sufficiency of the evidence was not presented to the lower court by either a motion for new trial or for advised verdict of guilty. It was held that the sufficiency of the evidence was not before the Supreme Court. In State v. Emmil, *supra, both* appeals (from the order denying the motion for new trial and from the judgment) were taken too late, so there was nothing for the Supreme Court to review. And in State v. Wilson, *supra,* the order denying the motion for new trial was not appealed from, and the appeal from the judgment was taken too late, so, again, obviously the Supreme Court had nothing before it. True, State v. Wilson contains language to the effect that failure to appeal from the order denying the motion for new trial "alone would have prevented appellant from raising the sufficiency of the evidence," but

this is obviously dictum where there is no appeal at all from a judgment or anything else.

■ This court has held many times that it will not review the sufficiency of the evidence unless the matter has been brought before the lower court either by a motion for a new trial or by a motion for an advised verdict. Decisions refusing to consider the sufficiency of the evidence because the matter was not raised in the trial court include State v. Lende, 190 N.W.2d 52 (N.D.1971); State v. Haider, 150 N. W.2d 71 (N.D.1967); State v. Timm, 146 N.W.2d 552 (N.D.1966); State v. Eli, 62 N.W.2d 469 (N.D.1954); State v. Mostad, 70 N.D. 73, 291 N.W. 910 (1940); State v. Johnson, 68 N.D. 236, 278 N.W. 241 (1938); State v. Fahn, 53 N.D. 203, 205 N.W. 67 (1925); and State v. Glass, 29 N.D. 620, 151 N.W. 229 (1915).

■ All of these cases illustrate the application of the basic principle, applicable to both civil and criminal cases, that a fair opportunity must be given to the trial court to correct any alleged error before it is raised as grounds for appeal. But there is a difference between requiring the question to be raised in the trial court, and the rule advocated by the State here to the effect that a defendant must appeal from an order denying a motion raising the issue or else he cannot have it considered under an appeal from the judgment. We have many times held the former, but never the latter, in criminal cases.

In State v. Gill, 154 N.W.2d 791 (N.D. 1967), the appeal was from the judgment alone. No motion for a new trial was made in the lower court, but a motion for a directed verdict was made (although we had no provision for directed verdict in criminal cases), and this court considered it as a motion for an advised verdict, and fully considered the sufficiency of the evidence. In State v. Dietz, 115 N.W.2d 1 (N.D.1962), again the appeal was from the judgment alone, and, although a motion for a directed verdict was made and denied and no attempt to appeal from the order denying such motion was made, this court fully considered the sufficiency of the evidence again. We will do so here.

Perhaps the difference in approach between civil and criminal cases arises in part because of the language of Section 29–28–27, N.D.C.C., which reads as follows:

"Upon an appeal taken by the defendant from a verdict or judgment, the supreme court may review any intermediate order or ruling which involves the merits or which may have affected the verdict or judgment adversely to the defendant."

■ As to the right and duty of the Supreme Court to consider errors in instructions where the judgment is appealed from but not the order denying the motion for new trial, we believe the law is even more clear. Even in State v. McClelland, *supra,* upon which the State relies, the refusal to consider the propriety of the instructions was based upon the defendant's failure to raise the point in the lower court, not upon any claimed principle of res judicata. The same is true of many of the other cases cited above.

We hold that the alleged error in instructions is a matter of law, which (while it must be raised in some appropriate fashion in the lower court) can be reviewed upon an appeal from the judgment, just as sufficiency of the evidence can.

■ Under the new North Dakota Rules of Criminal Procedure, an appeal will rarely be taken from an order denying a motion for new trial, since an appeal from the judgment will bring up for review all claims of error or rulings and instructions properly raised in the trial court and the making of a timely motion for new trial postpones the time for appeal from the judgment until ten days after entry of the order denying the motion. Appeals from orders denying motions for new trial will ordinarily be appropriate only where the

order itself is a final determination of the action, as where a motion for new trial on the ground of newly discovered evidence is denied after the time for appeal from the judgment has passed. See Rule 33, N.D. R.Crim.P., and Rule 33, F.R.Crim.P.; 8A Moore's Federal Practice, Secs. 33.02(1) and (2), and 6A Moore's Federal Practice, Secs. 59.15(1), (2), and (3).

■ The touchstones hereafter for an effective appeal on any proper issue should be (1) that the matter has been appropriately raised in the trial court so that the trial court can intelligently rule on it, and (2) that there be a valid appeal from the judgment. Any other traps for the unwary on the road to the appellate courthouse should be eliminated.

## II. THE MERITS OF THE APPEAL

■ As to the sufficiency of the evidence, the brief summary of the facts given above shows that there were many factual issues peculiarly within the province of the jury. While certainly an inference of innocence could reasonably be drawn from the evidence, that fact does not present a question of law for review by an appellate court if there are other facts which reasonably justify an inference of guilt. Here, there are conflicts as to whether the defendant was an aggressor, whether he had an opportunity to avoid the confrontation after or before it commenced, whether he was justified in discharging the weapon, whether the weapon was fired in a heat of passion or as a result of culpable negligence and, in sum, whether he was guilty or innocent. We hold the evidence was sufficient to raise a factual issue for determination by the jury.

Our problem arises from the instructions. The instructions as to self-defense and retreat are set out in full as follows:

"I charge you, Members of the Jury, that the doctrine of self-defense or self-protection is founded upon necessity, and in self-defense no more violence may be used than is necessary under all the circumstances, but it is not necessary that at the time of the commission of the acts of self-defense, the person so acting in self-defense actually was in danger, so long as the person acting in self-defense actually believed himself in danger, and commits the act of self-defense upon what he believes to be reasonable apprehension of danger to himself, resulting from the commission of some overt act towards him by an antagonist, from which he apprehends such danger.

"A person attacked need not retreat before exercising the right of self-defense. However, the claim of self-defense is not maintainable, where the Defendant had ample and full opportunity to retire to a place of safety and thus avert the crime.

"If you, Members of the Jury, believe from the evidence that at the time the Defendant is alleged to have shot John Tidball, the decedent, the circumstances surrounding him were such as would reasonably justify or induce in his mind an honest belief that he was in danger of receiving from the decedent, John Tidball, some great bodily harm, and that the Defendant in doing what he did was acting solely from instincts of self preservation, then the Defendant is not guilty and you should so find.

"Moreover, since it is the duty of the State to show, in this instance, that the Defendant was not acting in self-defense, I charge you that you must acquit the Defendant unless you are convinced beyond a reasonable doubt that he was not acting in self-defense. If there is any reasonable doubt in your mind, after consideration of the evidence and these instructions, that the Defendant was acting in self-defense at the time of the alleged shooting of John Tidball, that doubt must be resolved in favor of the Defendant and you must find him not guilty.

"You are instructed that generally the right to use deadly force in self-defense is not available to one who is the aggressor or provokes the conflict. However, if one who provokes a conflict thereafter withdraws from it in good faith and informs his adversary by words or actions that he desires to end the conflict, and he is thereafter pursued, he is justified in using deadly force to save himself from imminent danger of death or serious bodily harm.

"If the Defendant was not the aggressor, and had reasonable grounds to believe and actually did believe that he was in imminent danger of death or serious bodily harm from which he could save himself only by using deadly force against his assailant, he had the right to employ deadly force in order to defend himself. By 'deadly force' is meant force which is likely to cause death or serious bodily harm.

"In order for the Defendant to have been justified in the use of deadly force in self-defense, he must not have provoked the assault on him or have been the aggressor. Mere words, without more, do not constitute provocation or aggression.

"If evidence of self-defense is present, the State must prove beyond a reasonable doubt that the Defendant did not act in self-defense. If you find that the State has failed to prove beyond a reasonable doubt that the Defendant did not act in self-defense, you must find the Defendant not guilty. In other words, if you .have a reasonable doubt whether or not the Defendant acted in self-defense, your verdict must be not guilty."

■ It is the second paragraph quoted above which creates the most problems. The defendant made specific objection to this language. It is obvious that the trial court was attempting to reconcile some decisions made by this court in days long past when both pleadings and instructions were more technical than they are now. The first sentence correctly states the law of North Dakota. State v. Swift, 53 N.D. 916, 208 N.W. 388 (1926). The second sentence is taken verbatim from the syllabus by the court to State v. Lehman, 44 N.D. 572, 175 N.W. 736 (1919). In the *Lehman* case the defendant claimed he had first been assaulted by the decedent, and this court held that at that point he might have exercised a right of self-defense. But the evidence showed that the defendant thereupon pursued the decedent into a house, attempted to break down the door, shot through an interior door a couple of times, and finally succeeded in gaining entrance and killing the decedent. Under those circumstances, this court held that the defendant's prior right of self-defense no longer existed, and he became the aggressor in view of the fact that he "had ample and full opportunity to retire to a place of safety and thus avert the crime." This principle is correctly stated by the lower court later on where the instructions state that "if one who provokes a conflict thereafter withdraws from it in good faith and informs his adversary by words or actions that he desires to end the conflict, and he is thereafter pursued, he is justified in using deadly force to save himself from imminent danger of death or serious bodily harm."

■ But, as we read the second paragraph above quoted, it can be interpreted by a jury as stating that a person attacked need not retreat before defending himself, but if he is a defendant and has an opportunity to retire to a place of safety, he must do so. This, of course, is not the law.

While we sympathize with the district judge in his attempt to reconcile the extremely technical statements of State v. Swift and State v. Lehman, we must recognize that the instructions are prejudically erroneous where they advise the jury that this defendant could not claim self-defense if he had an ample and full opportunity to retire to a place of safety. We

therefore reverse on this ground alone, since the instruction was erroneous and related to a subject which was central to the case, and therefore affected the substantial rights of the defendant. State v. Maresch, 75 N.D. 229, 27 N.W.2d 1 (1947).

■ We decline to join the dissent in ruling as a matter of law that Haakenson was an aggressor. This is a question for the jury under proper instructions.

While, as we have said, we consider the evidence sufficient for conviction, it is likewise true that the jury may have acquitted the defendant if it were not for the misleading instruction. The fact that the evidence was ample for a conviction does not alter the requirement of a fair trial. State v. Schlittenhardt, 147 N.W.2d 118 (N.D.1966).

And, as in civil cases, we are more inclined to permit a new trial in case of doubt than to deny one. See Linington v. McLean County, 146 N.W.2d 45 (N.D. 1966), and cases cited.

■ Upon a retrial, we suggest that the law is, and should be, that there is no invariable duty to retire to a place of safety on the part of a victim of an aggressor, but the reasonableness of retreat or standing one's ground and the fact of aggression by one party against the other are circumstances which the jury can consider in deciding whether the right of self-defense exists. See 1 Devitt & Blackmar, Federal Jury Practice and Instructions, 2d Ed., Sec. 43.21, 43.23. It is better to flee than to kill, but flight is not required where it continues or increases the danger.

We also suggest that the first sentence of the penultimate paragraph quoted above is erroneous for the same reason the second paragraph is and should not be part of any future instructions.

■ On the question of instructing as to second-degree manslaughter, we believe the lower court was clearly correct. Section 12–06–06, N.D.C.C., requires such an instruction. It reads:

"Whenever a crime is distinguished into degree, the jury, if it convicts the defendant, must find the degree of the crime of which he is guilty. Whenever a verdict of guilty is rendered against the accused upon a prosecution for homicide, the jury must find the degree thereof by its verdict, and the judge must determine the punishment to be inflicted within the limits prescribed by law."

See State v. Whiteman, 79 N.W.2d 528 (N.D.1956).

■ Of course, if it is plain beyond doubt that the defendant could not be guilty of a lesser degree of crime under the undisputed facts, then it would not be error to omit the instruction as to the lesser degree. State v. Woods, 24 N.D. 156, 139 N.W. 321 (1912). But, as we have pointed out above, we believe that the jury could, under the facts of this case, find the defendant guilty of the lesser offense of second-degree manslaughter.

Reversed and remanded for new trial.

ERICKSTAD, C. J., and PAULSON, J., concur.

TEIGEN, Judge (dissenting).

I agree with Judge Knudson that under the evidence and the circumstances of this case the instructions on self-defense, considered as a whole, are not erroneous nor prejudicial. It is my further conclusion that there is no evidence in this record requiring that instructions on self-defense be given. If there was any error it consisted of giving the instructions. However, such error favored the defendant and, since it was in his favor, he cannot complain about it. People v. Griner, 30 Mich.App. 612, 186 N.W.2d 800 (1971).

Instructions must be tailored to fit the facts of the case. There is no evidence in

this case from which the jury could infer that the defendant was not, and did not continue to be, the aggressor. Under all the self-defense instructions given, the law as to an aggressor is clearly and correctly stated. Although paragraph two of the instructions on self-defense may not be correct as a general statement of the law, it is correct under the state of the facts in this case as the word "defendant" specifically refers to the defendant in this case who, in order to have the benefit of the doctrine of self-defense, was required to withdraw and inform his adversary, by words or actions, that he desired to end the conflict, and was thereafter pursued. The majority, I fear, have looked upon the challenged instruction as a general proposition of law, and, in that light, have justly criticized it. However, as applied to the facts in this case, and particularly in light of the following clarifying instructions, it could do this defendant no harm. The jury, of necessity, in view of the evidence, must have applied the instruction to the facts in this case and to those facts alone. Furthermore, in construing the instruction, and all the instructions given on the doctrine of self-defense, it is still more clearly made to appear that the defendant was not prejudiced. In State v. Carter, 50 N.D. 270, 195 N.W. 567 (1923), this court held:

"Mere defectiveness or inaccuracy in the charge is not necessarily sufficient to justify a reversal. It must be made to appear that the court misstated a rule of law in a substantial particular and it must appear, from an examination of the entire charge, that the misstatement was calculated to mislead the jury in arriving at a verdict upon some question submitted to it. An instruction which states the law inaccurately or even incorrectly in part, may be cured by other portions of the charge which correctly state the law. State v. Hoff, 29 N.D. 412, 150 N.W. 929; 16 C.J. 1053. Likewise, an instruction not fully stating the law may be cured by a subsequent instruction which completes it. 17 C.J. 347. Theo-

retical or technical error, or error which, for other reasons, is not calculated to lead the jury to return an erroneous verdict, does not constitute a ground for a reversal. Comp.Laws 1913, § 11,013 [Section 29–28–26, N.D.C.C.]; State v. Tracy, 34 N.D. 498, 158 N.W. 1069; * * *"

Section 29–28–26, N.D.C.C., states:

"After hearing an appeal, the supreme court must give judgment without regard to technical errors or defects or exceptions which do not affect the substantial rights of the parties."

We are not here involved with a factual situation in which the defendant was in his home, his office or his place of business, nor was he acting in the performance of his duty to make an arrest or prevent an escape. The altercation occurred on a public highway at a point where the defendant had voluntarily gone, armed with a revolver, for the purpose of confronting a group of youths whom his friend, Mr. Sweep, had informed him had earlier impeded Sweep's progress upon the highway. The youths were engaged in an outdoor party in a wooded area through which the highway passed, and when Mr. and Mrs. Sweep had earlier attempted to pass by, the youths, or some of them, were in the process of dragging a log or fallen tree across the highway to replenish their bonfire. This action caused the first encounter. Mr. and Mrs. Sweep then drove back to the defendant's home and, within a few minutes, the defendant and Mr. Sweep went to the scene in Mr. Sweep's automobile. The defendant took his revolver with him. The automobile stopped on the highway in the proximate vicinity of the first confrontation. The two men got out of the car. The defendant alighted from the right side and Mr. Sweep from the left. With his revolver in his hand, the defendant held it high in the air and fired one or more warning shots. A number of youths were in the immediate area. A number of them were moving toward the car. The

defendant shouted a warning and fired warning shots, declaring that he was a deputy sheriff and had come to make an arrest. Profanities, vulgarities and taunts were exchanged between the defendant and the young men. The defendant, however, continued to press forward. The deceased came toward the car from its left and moved toward the front thereof. He was not armed. As he approached, the defendant fired the fatal shot at close range, killing the deceased with a bullet through the heart.

The defendant intentionally brought on the difficulty which ensued. He provoked the occasion. There is no evidence from which the jury could infer that the defendant withdrew or announced a desire for peace. It is clear he continued forward, pressing his demands, during which time he fired his revolver at least three times. The evidence on this issue is not in conflict. The defendant has not established a case which makes the doctrine of self-defense available to him. His acts amounted to a legal fault, provoking the difficulty which ensued and, having provoked the difficulty, he continued the resulting affray as an aggressor to the point where he shot the deceased. I find no evidence in the record to justify an instruction of self-defense. If there was any error, it consisted of giving an instruction on the doctrine of self-defense, but such error was in favor of the defendant and he cannot complain about it.

I agree with the majority that the sufficiency of the evidence and the alleged error in instructions are reviewable on this appeal from the judgment alone. However, I do not agree that the scope of review on appeals in criminal cases is different from that on appeals in civil cases. It is my conclusion that the sufficiency of the evidence and the claimed error in the instructions are reviewable in this case because the order denying the motion for a new trial, in which these issues were raised, was entered prior to the entry of the judgment and thus became an interme-

diate order and reversible on appeal from the judgment under Section 29–28–27, N. D.C.C. This section provides:

"Upon an appeal taken by the defendant from a verdict or judgment, the supreme court may review any intermediate order or ruling which involves the merits or which may have affected the verdict or judgment adversely to the defendant."

We have a similar statute governing civil appeals. Section 28–27–28, N.D.C.C., provides:

"Upon an appeal from a judgment, the supreme court may review any intermediate order or determination of the court below which involves the merits and necessarily affects the judgment appearing upon the record transmitted or returned from the district court, whether the same is excepted to or not. * * *"

In construing the civil statute we held in Goodman v. Mevorah, 79 N.D. 653, 59 N. W.2d 192 (1953), as follows:

"Where a motion for a new trial is made and denied before judgment is rendered and entered the order denying a new trial is reviewable on an appeal from the judgment."

But

"Where an order denying a motion for a new trial is made after judgment an appeal from the judgment alone does not bring up for review the order denying a new trial."

An order which grants or refuses a new trial is an appealable order in both civil (Section 28–27–02(4), N.D.C.C.) and criminal (by the defendant, Section 29–28–06, N.D.C.C., and by the State, Section 29–28–07, N.D.C.C.) actions. The statutes in both criminal and civil appeals harmonize and I see no reason for a difference in the scope of review permitted in this court as a result thereof.

Further, I wish to point out that in both civil and criminal appeals from the judg-

ment, questions of law or of the sufficiency of the evidence can be reviewed on an appeal from the judgment without the necessity of having made a motion for a new trial, providing those issues were raised and ruled upon in some appropriate fashion in the lower court. Sections 28–27–27 and 29–23–11, N.D.C.C. Thus there is no necessity to move for a new trial after the verdict in order to raise the issues of sufficiency of the evidence or questions of law in either civil or criminal appeals, providing the matters were brought before the trial court by an appropriate objection, exception or motion and ruled upon by the trial court prior to the entry of the final judgment.

For these reasons it is my opinion that if the order denying the motion for a new trial had been entered subsequent to the entry of the final judgment of conviction, the issues includable in that order, from which no appeal was taken, became res judicata and not reviewable on appeal from the judgment alone.

KNUDSON, Judge (dissenting):

It serves no purpose in disagreeing with the majority on the question of what is reviewable on an appeal only from the judgment as the statutes that were effective at the time of this appeal have been superseded by the new Rules of Appellate Procedure which became effective March 1, 1973, after the appeal in this case was perfected, and thereafter will govern all appeals.

However, I cannot agree with the majority in holding that the instruction on self-defense was erroneous and prejudicial to the defendant, requiring that the case be remanded for a new trial.

The claim is made that a part of the instruction is erroneous as being inconsistent.

A person attacked need not retreat before exercising the right of self-defense. However, the claim of self-defense is not maintainable, where the defendant had ample and full opportunity to retire to a place of safety and thus avert the crime.

An inadequacy in one part of the instruction relating to self-defense may be cured by other parts of the instruction which adequately explain the applicable law. 40 Am.Jur.2d Homicide § 519, p. 773.

The paragraph of the instruction drawn into question here was not prejudicial error when read in light of the other instructions given on the subject of self-defense. This paragraph appears to be introductory in nature, an overview which is amplified in paragraphs five and six of the instructions, which state:

You are instructed that generally the right to use deadly force in self-defense is not available to one who is the aggressor or provokes the conflict. However, if one who provokes a conflict thereafter withdraws from it in good faith and informs his adversary by words or actions that he desires to end the conflict, and he is thereafter pursued, he is justified in using deadly force to save himself from imminent danger of death or serious bodily harm.

If the Defendant was not the aggressor, and had reasonable grounds to believe and actually did believe that he was in imminent danger of death or serious bodily harm from which he could save himself only by using deadly force against his assailant, he had the right to employ deadly force in order to defend himself. By "deadly force" is meant force which is likely to cause death or serious bodily harm.

The correctness of the instructions given is determined by the rule governing the right of self-defense as applied to the situation developed by the evidence. 40 Am. Jur.2d Homicide § 519, p. 772. We must therefore review the evidence in order to determine whether the instructions given were correct.

We will review the testimony of Dennis Sweep, an eyewitness and witness for the defendant, who presented the testimony most favorable to the defense.

Sweep testified that he and his wife spent the latter part of the evening of July 24 at the Earl Haakenson residence, departing for Bismarck at approximately 3:30 a. m. Shortly after departing, Sweep encountered several young people standing on the road who moved as his car approached. He inquired, "What seems to be the trouble?" and was met with a response of profane and abusive language against him and his wife, to which he responded in like kind. He then returned to the Haakenson residence, where he told defendant that they, the Sweeps, had "some trouble down at the corner and that there were some people blocking the road." Sweep testified that defendant told his wife to call the sheriff, and that Sweep asked Haakenson to return with him to the corner "because he probably knew some of the kids or something and [would] be able to help me in some way." In response to this request by Sweep for help to get back to their home Haakenson could have suggested they wait until the sheriff arrived, or told the Sweeps of the alternate route to return to Bismarck. He did not.

Then, Sweep testified, "and then Earl [Haakenson] asked me if I thought we should take a gun and I said, no, we didn't need a gun . . . ." Haakenson, nevertheless, took a loaded revolver. Sweep continued, "then we decided to go back up to the corner and find out what's going on." Again, Haakenson and Sweep could have awaited the sheriff's arrival, or the Sweeps could have returned to Bismarck via the alternate route.

Sweep drove his automobile back to the place where the altercation had taken place. Although the defendant argued orally that there is no evidence as to who was driving the automobile—a point which may be crucial—Sweep testified that he drove the automobile, that it was his company's automobile, and that Haakenson occupied the passenger seat in front.

They stopped close to the young people, with the car lights on, "trying to see if Earl could recognize any of the kids." At this point Haakenson said, "We might as well find out what is going on," and got out of the car on the passenger side, while Sweep got out on the driver's side, and stood behind the door. Defendant said, "What's going on?" The young people were quite abusive and profane, and their language carried a threat to kill both Sweep and the defendant. There was no need for them to get out of the automobile in the first place, and since the youths outnumbered them and acted in a menacing manner, such as to raise fear for their safety, they should have retreated. Sweep testified, "Immediately people started walking toward the car and off to my left on the bank, and below the bank, a fellow was coming up carrying a shotgun." A reasonable man should have known this was a dangerous situation, one that called for retreat. The defendant argued orally that the position of the defendant and of Sweep in relation to the automobile, and who was the driver, was not known, nor whether there was a possibility of retreat. However, the testimony of Sweep definitely places the parties near the door of the car and that Sweep was the driver. It is obvious that having left the car only seconds before, they could have got back in and left, under the circumstances, more quickly than they got out. The whole testimony indicates that neither Sweep nor Haakenson was ever more than a few feet from the nearest door of the automobile.

It was John Tidball, who was carrying the shotgun which he aimed at Sweep, who said, "I will blow [their] heads off." Sweep "froze and stood there and the gun went click." Sweep jumped behind the car door, describing himself as "A lover, not a fighter," who apparently was ready to retreat. Haakenson was not. He fired the first of three or four shots, the last of which killed John Tidball.

The question of whether the defendant was an aggressor or non-aggressor is for the jury to determine from the evidence. In this case the jury must have found that the defendant was the aggressor and not entitled to the defense of self-defense.

From a review of the facts in this case, the jury was correct in finding the defendant guilty of manslaughter in the second degree.

The rule requiring accused to retreat is especially applicable where he was at fault in getting himself in the dangerous situation. 40 C.J.S. Homicide § 127, p. 1012.

It is obvious that this confrontation need not have developed in the first place, and that at several points warnings of impending danger should have been obvious, and the opportunity to escape was present. Yet Haakenson continued to apply pressure until the fatal bullet was fired.

In 40 C.J.S. Homicide § 114, page 964, the following is found:

. . . a number of authorities, in enumerating the elements of self-defense, have referred to the following: (1) The absence of aggression or provocation on the part of the slayer in provoking or continuing the difficulty. (2) The actual and honest belief of the slayer that he was in imminent danger of death, great bodily harm, or some felony, and that there was a necessity to kill in order to save himself therefrom. (3) The existence of reasonable grounds to such belief. (4) The duty of the slayer to retreat or avoid the danger. The acts which accused may do and justify under a plea of self-defense depend primarily on his own conduct and secondarily on the conduct of deceased.

The elements stated above are required to be shown in a number of states. People v. Townes, 44 Mich.App. 383, 205 N.W.2d 258 (1973); Commonwealth v. Daniels, 301 A.2d 841 (Pa. 1973); State v. Johnson, 277 Minn. 368, 152 N.W.2d 529 (1967).

It is apparent that the defendant provoked the confrontation here, that the law therefore requires that he withdraw and communicate his withdrawal to the other parties; but that he did not do so. Under such circumstances it is doubtful whether he was entitled to claim self-defense, because he provoked the argument and failed to retreat. Under all of the circumstances, the instruction challenged here is clearly not prejudicially erroneous. If Haakenson had been attacked and had not provoked the confrontation, the instruction may have been ambiguous and prejudicial. But any ambiguity existing is one which, if anything, works to the defendant's advantage. It could have raised in the minds of the jury the question of whether defendant need not be required to retreat. Since any doubt was resolved against Haakenson, there is no prejudice or any error found in this particular instruction.

In summary, the part of the instruction under attack here is not prejudicially erroneous, but if it is, is cured by the whole of the instruction which correctly states the law on self-defense as applied to the facts in this case.

The majority opinion recites that the defendant and his wife had trouble previously with trespassers, loud parties, and other nocturnal noises. However, there is no evidence in the record to show previous encounters between the defendant and the deceased, or to show previous trouble from trespassers, loud parties and other nocturnal noises, except that Mrs. Haakenson testified to trouble only in their yard with other people on other occasions, when the defendant had shot a gun into the air.

Nor is there any evidence that the defendant had trouble with other people in the area. There is no evidence to justify his action in leaving his home and yard to seek out those with whom Mr. Sweep had had an altercation. There was another street known to the defendant by which Mr. Sweep could return to his home in Bismarck and avoid a further confronta-

tion with the boys and youths, and of which the defendant did not inform Mr. Sweep.

The majority suggests that upon a retrial the law is that there is no absolute duty to retreat on the part of a victim of an aggressor, but the reasonableness of retreat or standing one's ground and the fact of aggression by one party against the other are circumstances which only the jury can consider in deciding whether the right of self-defense exists.

However, it is doubtful whether such instruction is applicable in this case. As stated before, from the evidence it is apparent that defendant was the aggressor or provoked the confrontation, and the jury must have found so. The determination of who was the aggressor was a question of fact for the jury. The suggested instruction fails to state a position with regard to the aggressor. Paragraph 4 of the trial court's instructions states that self-defense is not available to one who is the aggressor or provokes the conflict unless he withdraws and informs his adversary of his intent to end the conflict, but the opinion of the majority holds, in effect, that this is not sufficient to overcome the prejudice it finds in paragraph 2. If this is so, the suggestion of the Court should include a separate instruction on retreat with regard to an aggressor.

The majority cites 1 Devitt and Blackmar, Federal Jury Practice and Instructions (2d ed. 1970), §§ 43.21, 43.23, in support of its proposed rule. Paragraph 4 of the court's instructions under attack is a verbatim copy of the second section cited, § 43.23, which reads:

Generally the right to use deadly force in self-defense is not available to one who is the aggressor or provokes the conflict. However, if one who provokes a conflict thereafter withdraws from it in good faith and informs his adversary by words or actions that he desires to end the conflict, and he is thereafter pursued, he is justified in using deadly force to save himself from imminent danger of death or serious bodily harm.

Paragraph 5 of the court's instructions paraphrases § 43.21, which reads:

If the defendant had reasonable grounds to believe and actually did believe that he was in imminent danger of death or serious bodily harm and that deadly force was necessary to repel such danger, he was not required to retreat or to consider whether he could safely retreat. He was entitled to stand his ground and use such force as was reasonably necessary under the circumstances to save his life or protect himself from serious bodily harm.

However, if the defendant could have safely retreated but did not do so, his failure to retreat is a circumstance which you may consider, together with all other circumstances, in determining whether he went farther in repelling the danger, real or apparent, than he was justified in doing under the circumstances.

These recommended instructions from Devitt and Blackmar which are cited by the majority in support of its recommended instruction on retrial, do not support the recommendation of the majority, but support the instructions as given by the court.

It must be reiterated that the instructions given by the trial court were not erroneous, and not prejudicial, when considered as a whole.